BARBARA COHAN vs. CURT FEUER, administrator,[1] & others.[2]

Middlesex. December 2, 2003. - July 7, 2004.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Alimony, Death of party. *Practice, Civil,* Stipulation.
*Words,* "Until death or remarriage."

Where the parties to a divorce decree later entered into a stipulation modify-
    ing that decree and provided that alimony payments by the husband should
    "cease upon the death or remarriage" of the wife, a Superior Court judge
    properly determined that the stipulation did not contemplate postmortem
    alimony, where the stipulation could not be interpreted in isolation from
    the judicial decrees from which it grew and the dispute it was intended to
    resolve, and therefore, the language of the stipulation was not of itself suf-
    ficient to overcome the weight of evidence indicating that, when the par-
    ties entered into the stipulation, they intended only to resolve a dispute
    over the amount of alimony, not over its duration. [154-157]
Declaration that an obligation to make periodic alimony payments ends
    automatically at the remarriage of the obligee or at the death of either
    party, without regard to the award's term as fixed in a divorce decree or
    separation agreement, unless either (1) the original decree or agreement
    provides otherwise or the parties legally amend their agreement to provide
    otherwise, or (2) in the case of the obligor's death, the court makes written
    findings establishing that termination of the award would work a substantial
    injustice because of facts not present in most cases. [157-158]

CIVIL ACTION commenced in the Superior Court Department on
November 24, 1998.

Motions for summary judgment were heard by *Diane M.
Kottmyer,* J., and entry of a separate and final judgment was
ordered by *Regina L. Quinlan,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

[1]Of the estate of Henry H. Cohan.
[2]Rebecca M. Cohan, Benjamin A. Cohan, and Tikvah S. Portnoi, interveners.
Rebecca M. Cohan, the decedent's second wife, from whom he was also
divorced, intervened on behalf of Sarah B. Cohan, the decedent's minor
daughter. Tikvah S. Portnoi is a trustee appointed under the will. Collectively,
we refer to these parties as the "defendants."

*John M. Reed* (*Thomas A. Reed* with him) for the interveners.
*Shannon M. Fitzpatrick* for the plaintiff.

*Pauline Quirion*, for Women's Bar Association & another, amici curiae, submitted a brief.

MARSHALL, C.J. A 1983 stipulation modifying the amount of alimony and child support due to a former wife under the terms of a New Jersey divorce decree was entered as an order in the Newton Division of the District Court Department. We must resolve whether the stipulation entitles the wife to alimony payments from her former husband's estate, where it provided that alimony payments "cease upon the death or remarriage" of the wife. We conclude that, in the specific circumstances of this case, the disputed language does not give rise to a claim for postmortem alimony.[3]

In 1998, Barbara Cohan (plaintiff) brought an action in the Superior Court against the administrator of the estate of her former husband, Henry H. Cohan (decedent), seeking a declaratory judgment that the stipulation required the estate to pay her alimony until her death or remarriage.[4] The decedent's two children by his second marriage, the primary beneficiaries of his estate, intervened. The plaintiff and the intervener defendants filed cross motions for summary judgment. The judge denied summary judgment without prejudice, finding that the language of the stipulation was ambiguous. The parties renewed their motions for summary judgment, submitting affidavits and other evidence purporting to show what the stipulation intended. Based on that evidence, the judge determined that the stipulation did not contemplate postmortem alimony, and granted partial summary judgment for the defendants. See note 4, *supra.* The plaintiff appealed. The Appeals Court vacated the judgment, concluding that the terms of the stipulation required postmortem alimony payments so long as the plaintiff remained alive and unmarried. *Cohan* v. *Feuer*, 58 Mass. App. Ct. 223 (2003). We granted the defendants' application for further appellate review, and now affirm the Superior Court judgment.

[3]We acknowledge the amicus brief filed by the Women's Bar Association and Greater Boston Legal Services.

[4]The plaintiff also sought arrearages in alimony payments, an issue that is not before us.

1. *Background.* As required in reviewing a summary judgment, we relate the relevant facts in their light most favorable to the plaintiff. See *Remy* v. *MacDonald,* 440 Mass. 675, 676 (2004). On July 17, 1973, the decedent and the plaintiff, who had been married since 1955 and had three minor children, were divorced by the Superior Court of New Jersey. The divorce decree, which is not in the record before us, ordered the decedent, a physician, to pay the plaintiff $540 a month in alimony and $460 a month (about $153 for each child) in child support. The decree also provided for the equitable distribution of the parties' assets.[5] Neither party asserts that the original New Jersey decree provided for postmortem alimony.[6]

The decedent defaulted on his support obligations, was briefly jailed for the offense, and eventually left New Jersey without informing the plaintiff of his whereabouts. Eventually she located him; he had remarried and was practicing medicine in Massachusetts. She filed an enforcement action in the District Court under G. L. c. 273A (Uniform Reciprocal Enforcement of Support Act).[7] On August 17, 1977, a District Court judge issued an order enforcing the New Jersey decree, which had recently been modified by a New Jersey judge to reduce the amount of child support to $306 a month because the parties' eldest child had become emancipated.

Almost five years later, on July 7, 1982, the same District Court judge reduced the decedent's alimony and child support obligation to the plaintiff to an unallocated $422 a month.[8] The plaintiff petitioned the court to restore the full amount of alimony under the New Jersey decree ($540 a month) and one-

---

[5]While we do not have the original New Jersey divorce decree, there is evidence in the record, including later court decrees, the plaintiff's notice of demands against the decedent's estate, a brief filed by the plaintiff in the District Court, and an affidavit of the plaintiff, that indicate that at the time of the 1973 divorce, the decedent was ordered to pay to the plaintiff amounts representing her equitable share of the proceeds from the sale of the decedent's New Jersey medical practice, and fifty per cent of the practice's accounts receivable.

[6]See note 9, *infra.*

[7]In 1995, G. L. c. 273A was replaced by G. L. c. 209D (Uniform Interstate Family Support Act). St. 1995, c. 5, §§ 87 and 105.

[8]It is unclear what prompted this order. It may have been at least partly related to the decedent and the plaintiff's second child's completing college.

third of the child support order ($153 a month), or in the alterna-
tive, to restore the 1977 order for $540 a month in alimony and
$306 a month in child support.

At the court house on the day of the hearing, the plaintiff and
the decedent executed a handwritten stipulation. The stipulation,
which was approved by the judge and entered as an order,
required the decedent to pay the plaintiff $475 a month in
alimony and $150 a month in child support. The child support
payments were to terminate in June, 1984, when the parties'
youngest child would be graduated from college. Alimony was
to "cease upon the death or remarriage of the [plaintiff]."

The decedent died on January 15, 1998, leaving behind two
former wives, two sons and one daughter from his first mar-
riage, and one son and one minor daughter from his second
marriage. No provision was made in his will for support pay-
ments to the plaintiff, nor had he named her as a beneficiary of
any life insurance or annuity contract, or other asset.

2. *Discussion.* Two principles guide our analysis. First, "[a]s
a general rule, an order for the payment of alimony ceases with
the death of the party obligated to pay it unless the decree or
judgment provides otherwise . . . ." *Barron* v. *Puzo,* 415 Mass.
54, 56 (1993).[9] In other words, the judge will ordinarily presume
that an alimony obligation does not survive the obligor's death
unless the parties or the judge specify otherwise. See *id.* The
reasoning behind this presumption is straightforward, if often
only indirectly acknowledged. It is because "the marital living
standard assumes the obligor's continued survival. To continue
the award after the obligor's death would give the obligee a
claim on the obligor's accumulated assets rather than on his
post-marital earnings. Any claims on these assets will already
have been satisfied by the property division made at divorce."[10]
American Law Institute's (ALI) Principles of the Law of

---

[9]At the time the original divorce decree was entered, New Jersey common
law provided that "[t]he death of either the husband or the wife terminates the
husband's obligation to support the wife." *Modell* v. *Modell,* 23 N.J. Super.
60, 62 (App. Div. 1952). See *Jacobitte* v. *Jacobitte,* 135 N.J. 571, 577-578
(1994) (noting State Legislature codified *Modell* principle in 1988 statutory
amendment).

[10]As we noted above, the original divorce decree included an equitable
distribution of assets.

Family Dissolution: Analysis and Recommendations § 5.07 comment b (2002). Second, the Commonwealth and the decedent's creditors and survivors have a strong interest in the finality of estates. See, e.g., *Woodward* v. *Commissioner of Social Sec.*, 435 Mass. 536, 547-548 (2002). With these principles in mind, we turn to the plaintiff's claim.

The plaintiff does not disagree with the general rule concerning the termination of alimony on the obligor's death. Rather, she asserts that the language in the stipulation — alimony "shall cease upon the death or remarriage of the [plaintiff]" — is an express agreement on the part of the parties and the court to override the general rule so that she may receive postmortem alimony. She argues that this conclusion is compelled by *Taylor* v. *Gowetz*, 339 Mass. 294 (1959), and *Farrington* v. *Boston Safe Deposit & Trust Co.*, 280 Mass. 121 (1932), where we held that the presumption against postmortem alimony had been rebutted by similar language. We disagree.

In *Farrington* v. *Boston Safe Deposit & Trust Co.*, *supra* at 122, 125, we held that language in a divorce decree that ordered the husband to pay his former wife alimony "during the term of her life" indicated the judge's intent to bind the husband's estate for alimony payments if he predeceased her. Similarly, in *Taylor* v. *Gowetz*, *supra* at 296, 299, we interpreted language in a separation agreement whereby the husband agreed to pay alimony "if and so long as the wife is living" to mean that the parties intended alimony payments to survive the husband's death. In contrast to the present case, however, the *Taylor* agreement and the *Farrington* order were entered in original proceedings, not in a subsequent enforcement action. *Taylor* v. *Gowetz*, *supra* at 296. *Farrington* v. *Boston Safe Deposit & Trust Co.*, *supra* at 122. This is not a "difference without a distinction," as the plaintiff argues. It is a distinction that makes all the difference.

In *Taylor* and *Farrington*, it was appropriate for each judge to look solely to the language of the document at issue, which in each case was found to be a complete and unambiguous statement resolving the divorce. See *Taylor* v. *Gowetz*, *supra* at 298-299; *Farrington* v. *Boston Safe Deposit & Trust Co.*, *supra* at 124-125. Moreover, in both *Taylor* and *Farrington*, there was

evidence clearly indicating that the parties had contemplated that the obligee spouse would benefit financially from the estate of the obligor spouse, should he die first. See *Taylor* v. *Gowetz, supra* at 296 (agreement required husband's estate to pay $10,000 to former wife); *Farrington* v. *Boston Safe Deposit & Trust Co., supra* at 123 (husband executed bond obligating him to obtain life insurance policy for benefit of his former wife, and to provide annuity for her in his will). By contrast, here we have a stipulation that sought to resolve the parties' ongoing dispute solely over the appropriate amount of monthly support payments due to the plaintiff under the terms of an underlying document, the original divorce decree, as previously modified.[11] In this context we cannot interpret the stipulation in isolation from either the judicial decrees giving it life or the dispute it was intended to resolve. See *Costello* v. *Commissioner of Revenue*, 391 Mass. 567, 570 (1984) ("A stipulation is not unlimited as to time, scope, or theory but must be interpreted in the context of the theory of the case").

Interpreting the stipulation in light of its broader context, the single phrase, "Said alimony payments . . . shall cease upon the death or remarriage of the [plaintiff]," is not of itself sufficient to overcome the weight of evidence indicating that, when they entered into the stipulation, the parties intended only to resolve a dispute over the amount of alimony, not over its duration. Neither party maintains that the original New Jersey divorce decree provided for postmortem alimony, and the Superior Court judge found it "undisputed that the New Jersey decree imposed no such obligation." Moreover, unlike *Taylor* and *Farrington*, there is no evidence that the parties contemplated the plaintiff's benefitting financially from the decedent's estate in the event that he predeceased her. See note 13, *infra.* Later, alimony was not addressed in the 1977 modification of child support in New Jersey, nor was the duration of alimony a subject of the District Court judge's 1982 order reducing support payments to an unallocated $422 each month. The

---

[11]The stipulation itself acknowledges this larger context when it states: "Now come the Petitioner and the Respondent in the above matter and stipulate, subject to the approval of the court, that the original order of this court dated August 17, 1977 and modified on July 7, 1982 may be further modified as follows . . . ."

plaintiff's brief in support of her subsequent petition for reconsideration, which gave rise to the stipulation, does not mention the issue of the duration of alimony.[12]

The plaintiff nevertheless argues that she tendered "consideration" for an award of lifetime alimony by settling her lawsuit by stipulation. Given the context of the dispute, however, it appears that the plaintiff entered into the stipulation in order both to increase the amount of current alimony the decedent was at that time obligated to pay and to make it more difficult for the decedent, who had a history of defaulting on his support obligations, to obtain a further downward modification of alimony.[13] We agree with the judge in the Superior Court that, in the circumstances of this case, "[n]o rational juror could find that the parties intended that the language used in the [s]tipulation would modify the New Jersey decree by creating an obligation to continue the alimony payments after the husband's death."

Our decision today neither changes the general presumption that orders and agreements for the payment of alimony terminate when the obligor spouse dies, nor impedes the ability of judges and divorcing or former spouses to provide otherwise with language clearly stating their intent. To that end, we hereby

[12]The plaintiff argues that because the brief constitutes inadmissible hearsay and is irrelevant, the Superior Court judge improperly relied on it. The brief is clearly relevant; we cannot interpret the stipulation apart from the surrounding controversy. See *Costello* v. *Commissioner of Revenue*, 391 Mass. 567, 570 (1984). Because we do not consider the brief for the truth of the statements made therein, but merely as evidence of what arguments the plaintiff made to that court, it is not hearsay. See *Bobick* v. *U.S. Fidelity & Guar. Co.*, 439 Mass. 652, 656 n.8 (2003).

[13]Our interpretation is further supported by the fact that the plaintiff's attorney for the District Court petition made no statement affirmatively supporting her client's claim. In her affidavit filed in the present case the attorney merely restates the language of the stipulation and says that "the language . . . speaks for itself." As such, there is no evidence that the parties discussed postmortem alimony as part of the negotiations resulting in the stipulation. Even more telling, after the decedent's death, the plaintiff mailed a copy of the stipulation to her attorney, with a note asking, "Can this be continued from his estate? I did not die or remarry." The fact that she asked this question strongly suggests that no such agreement was contemplated when the stipulation was signed. We note further that nothing in the history of the prolonged litigation between these parties over the issue of support indicates that the decedent would intentionally increase his support obligations both currently and into an indefinite time beyond his death.

adopt § 5.07 of the ALI Principles of the Law of Family Dissolution: Analysis and Recommendations (2002), as modified for consistency with current Massachusetts law, and declare that an obligation to make periodic alimony payments ends automatically at the remarriage of the obligee or at the death of either party, without regard to the award's term as fixed in the decree or agreement, unless either (1) the original decree or agreement provides otherwise or the parties legally amend their agreement to provide otherwise, or (2) in the case of the obligor's death, the court makes written findings establishing that termination of the award would work a substantial injustice because of facts not present in most cases.[14] In the present case, we merely decide that the language of this particular stipulation, interpreted in light of the facts surrounding this particular dispute, does not legally obligate the decedent's estate to continue paying the plaintiff alimony until her death or remarriage.

3. *Conclusion.* For the reasons stated above, we affirm the Superior Court judge's grant of partial summary judgment for the defendants.

*So ordered.*

---

[14]Nothing we have said today changes the requisite standards for modification where both parties are still living. See, e.g., *Schuler* v. *Schuler*, 382 Mass. 366, 368 (1981) (complainant, where original agreement merges into judgment, must demonstrate material change in circumstances); *McCarthy* v. *McCarthy*, 36 Mass. App. Ct. 490, 490-491 (1994) (complainant seeking modification of survived agreement must demonstrate something more than material change of circumstances).