## Laura F. Braun *vs.* George H. Braun.

No. 04-P-1639.

Middlesex. November 15, 2006. - May 4, 2007.

Present: Gelinas, Dreben, & Grainger, JJ.

*Divorce and Separation,* Modification of judgment. *Jurisdiction,* Modification of divorce judgment. *Divorce and Separation,* Alimony, Child support.

A Probate and Family Court judge had jurisdiction to enter a judgment modifying a divorce judgment during the pendency of an appeal of that divorce judgment, but the party seeking modification of the judgment should have obtained leave from this court for the probate judge to enter a modified judgment. [851-854]

In an action for divorce, the probate judge properly ordered the wife to reimburse the husband, prior to the division of the proceeds of certain real estate, for expenses he incurred in connection with the property [854-855]; however, the judge's order that the husband and wife share equally their children's undergraduate college educational expenses in excess of established educational trusts was premature, given the relatively young ages of the children and the lack of special circumstances [855].

This court remanded a divorce matter to the Probate and Family Court for consideration whether life insurance (or other form of security) was appropriate to secure the husband's alimony obligation to the wife and, if appropriate, to enter an order thereon. [855-858]

In a divorce action, the judge's orders regarding visitation between the husband and the children were consistent with the recommendations of the guardian ad litem and were not an abuse of discretion [858-859], and the judge's order as to allocation between child support and alimony was a determination of the ultimate tax allocation of those payments pursuant to a reservation set out in a temporary order [859].

This court declined to address an issue, arising in an action to modify a divorce judgment, concerning the allegedly improper reallocation of assets (the proceeds of an exercised stock option) previously divided, where the husband did not challenge by appeal the decision to treat such proceeds as income when exercised, and did not argue in his brief in any meaningful way that they should not be so treated. [859-860]

A probate judge, in fashioning modified support orders in a divorce matter, did not fail to consider the husband's obligation to his former wife and children from a previous marriage. [860]

Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on January 18, 2002.

The case was heard by *Dorothy M. Gibson,* J., and complaints for contempt and for modification of judgment were heard by *Leilah A. Keamy,* J.

*Linda A. Ouellette* for Laura F. Braun.

*Erin Moran Shapiro* (*David E. Cherny* with her) for George H. Braun.

DREBEN, J. Before us are appeals by the wife from judgments of divorce on complaints filed by both parties and by the husband from a judgment of modification entered by a second judge. We ordered the appeals consolidated. In addition to numerous questions raised by the wife and the husband, each as to different provisions in the judgments, the husband raises the issue whether the second judge had jurisdiction to enter the modification during the pendency of the appeal of the divorce judgments. We hold that the second judge had such jurisdiction and affirm the modification judgment. We also affirm the judgments of divorce insofar as the issues have not become moot, with the exception of the matter of college expenses, and we remand to the Probate and Family Court for further consideration of the issue of life insurance.

1. *The divorce actions.* The judge's findings of fact reflect the following. The parties were married in May, 1990, and last lived together in January, 2002. Three children (ages eleven, ten, and six at the time of trial) were born of the union.[1]

The husband, who was forty-nine years old at the time of trial, is a vice-president in the bond and corporate finance group of a major insurance company. His compensation from employment consists, inter alia, of base salary, cash bonuses, restricted stock, stock options, and income derived from other entities created by his employer. At the time of trial, the husband's base salary was $237,200, but during the five years prior to trial the husband earned from all sources an average of $879,846 per

---

[1]The husband has three older children by a previous marriage for whom he was obligated to pay $950 per week in child support, to be reduced to $850 per week in June, 2003; the husband also was responsible for college tuition and expenses of the older children, two of whom were in college and had tuition and expenses then totaling approximately $75,000 annually.

year.[2] The marital assets were acquired through the husband's financial efforts, both before and during the marriage.

The wife was forty-one years of age at the time of trial and is in generally good health. She is a secretarial school graduate who has experience as an executive assistant. During the marriage the wife was the primary homemaker, not only for the parties' household and children, but also for the husband's children from his first marriage when they were with him. The wife has been out of the workforce for twelve years, and unless she either receives some retraining or completes her college degree, she will be unable to obtain employment sufficient to support herself and the children. The judge also stated that it would not be unreasonable for the wife to remain at home until the children complete high school.

The primary asset owned by the parties at the time of trial was property in Sherborn purchased in 1998. In 2001, the parties decided to demolish the existing structure and build a new home. To finance the construction, the parties obtained a construction loan (the balance of which was $1.63 million at the time of trial), liquidated substantial marital assets, and used the husband's employment income. They agreed to market the property at a listing price of $3.7 million.[3] The parties also owned a vacation home in Vermont that had an equity value of $154,000 and annual carrying costs of approximately $30,000. In addition, the husband had a 401(k) plan worth $526,959 and an interest in his employer's defined benefit plan of "undetermined value."

During the marriage the parties enjoyed a comfortable lifestyle, vacationing at all-inclusive resorts in Mexico and elsewhere. The wife has no expectation of future inheritance; the husband will receive $140,000 from the estate of his mother who died in January, 2003.

The judgments of divorce nisi dated September 15, 2003, awarded the wife primary physical custody of the children and

[2]Indeed, during the three years prior to trial, and after the husband's employer had "gone public," the husband earned $1,053,093.33 per year.

[3]Neither party has ever resided in the new Sherborn home. At the time of trial, the wife, with the children, was housesitting rent free in a home in Sherborn owned by family friends who were in Asia for an indefinite period.

ordered the husband to pay child support in the amount of $553 per week (calculated in accordance with the Child Support Guidelines as applied to the first $100,000 of the husband's base salary). Child support payments were to be reduced upon the emancipation of each child, and were to terminate upon the emancipation of the third child. Child support was to terminate upon the death of the husband so long as a life insurance policy called for by the judgment was in effect.

The judgments also provided that the husband pay alimony to the wife (terminable upon the earliest to occur of his death, the wife's death or remarriage, or December 31, 2014) from his "adjusted employment income," with the amount due the wife based upon a sliding percentage[4] to be reduced by a percentage of her earnings. The parties were ordered to use the net proceeds of the sale of the Sherborn home to pay off the outstanding construction loan ($1.63 million) and other debts (exceeding $242,000), as well as any additional amounts advanced by the husband to maintain the property until the sale, and to set aside $300,000 to fund "529 educational plans" for the children, $100,000 for each child.[5] The balance was to be divided equally between the parties.[6] In addition, the wife was assigned fifty percent of the marital coverture portion of (1) the net value of

---

[4]The judge directed that before calculating alimony, the husband's "first family expenses" (about $124,400 at the time of trial) were to be deducted from his income. The resulting amount was designated as the husband's "Adjusted Employment Income." The judgments provided that "[t]o the extent that Husband has 'Adjusted Employment Income' (defined as salary, bonus or incentive pay from employment; but excluding stock, stock option [unless exercised and received as income in which case the net amount received by Husband shall be included in his income for the purposes of this provision], retirement, or non-cash employee benefits) in excess of $100,000.00 per calendar year, he shall pay the following amounts to Wife, as alimony: a. 30% of his 'Adjusted Employment Income' (as defined above) between $100,000.00 and $250,000.00 in a calendar year; b. 28% of his 'Adjusted Employment Income' (as defined above) between $250,000.00 and $350,000.00 in a calendar year . . . [and progressively reduced percentages as applied to additional adjusted employment income between $350,000.00 and $900,000.00]."

[5]The judge found that "[b]ased upon the present real estate market and the expected return on the sale [of the Sherborn property], there will be ample funds to divide between the parties as well as to set aside funds for each of the children's future educational needs."

[6]The judgments also permitted the wife to retain the Vermont property if

the husband's 401(k) account as of June 1, 2003, and (2) the husband's defined benefit plan as of the same date.

Unsuccessful in a motion to amend the judgment, the wife filed a notice of appeal from the divorce judgments on November 10, 2003 (docketed January 7, 2004).[7] The wife's appeal was entered in this court on December 6, 2004.

2. *The modification action.* On October 29, 2004, some five weeks prior to the entry in this court of the wife's appeal from the divorce judgments, the wife filed a complaint for modification (docketed November 29, 2004) in which she sought, among other things, permission to remove the children to Vermont and an increase in alimony and child support. The husband filed a complaint for contempt alleging that the wife had interfered with his visitation rights. After an evidentiary hearing held on two days in June, 2005 (and while the appeal from the divorce judgments was pending in this court),[8] the second judge, concluding that there was a material change in circumstances,[9]

she paid the husband the sum of $65,500, representing his one-half equity interest in the property, and fifty percent of $8,613.04, representing the amount paid by him for the maintenance of the property between February 1, 2003, and May 5, 2003.

[7]There is no merit in the husband's argument that the wife's appeal must be dismissed for failure to comply with Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999). See generally *Anthony* v. *Anthony,* 21 Mass. App. Ct. 299, 300-302 (1985); *Blackburn* v. *Blackburn,* 22 Mass. App. Ct. 633, 634-635 (1986). The only motion described by rule 4 that was filed by the wife (and served within ten days of the date the judgment was issued) was her motion to amend the judgment of divorce pursuant to Mass.R.Dom.Rel.P. 52 (2006) and Mass.R.Dom.Rel.P. 59 (2006). As the wife's notice of appeal was filed within thirty days of the denial of that motion, her notice of appeal was timely.

[8]Originally, the June, 2005, hearing was for the purpose of adjudicating the wife's motion for temporary orders on her modification complaint and the husband's complaint for contempt. At the conclusion of those proceedings, the second judge "granted the Parties an additional day of trial . . . in order to allow the Court to proceed with an immediate judgment on the Complaint for Modification." Both parties ultimately agreed to forgo the additional day and "agreed that Judgment should be entered on the Mother's Complaint for Modification, based on the evidence adduced."

[9]The second judge found, inter alia, that the Sherborn property sold for approximately $2.2 million — far less than the parties or the first judge had anticipated — leaving the wife with proceeds from the sale of only $15,807.57, an amount insufficient to purchase or rent a new residence; that the wife and children were required to leave the home in which they were housesitting

entered a modification judgment,[10] and a judgment for the wife on the complaint for contempt. Among other things, the second judge denied the wife's request to remove the children to Vermont; ordered the husband to pay the wife $90,142.35, her share as determined by the second judge of the stock options exercised by the husband in 2004, and, in addition, to pay the wife thirty-three percent of the proceeds of any future stock options exercised by the husband; increased the husband's child support obligation to $1,000 per week (to terminate upon the emancipation of the last child); and ordered the husband to pay the wife alimony in the amount of $1,000 per week (to terminate upon the first to occur of the following: the wife's death, the husband's death, or the wife's remarriage) plus thirty-three percent of any bonus or incentive payments he may receive as compensation from his employment. After the entry of an order denying the husband's motion to amend the modification judgment and denying a portion of a motion he filed for clarification, the husband filed his notice of appeal from the modification judgment and the order on his motion for clarification.

3. *Entry of modification judgment during pendency of appeal from divorce judgments.* In a letter to this court submitted pursuant to Mass.R.A.P. 16, as amended, 428 Mass. 1603 (1999), the husband, reiterating a position advanced by him at the modification proceeding, but not raised in any of his briefs on appeal,

---

at the time of the divorce; that the wife and children are living with a family friend in Sherborn (with sleeping accommodations in the living and dining rooms); that the wife has begun working at a store at a salary of twelve dollars per hour but is not capable of supporting herself and the children without significant assistance from the husband; that the husband's W-2 income has increased since the divorce; and that the husband has acquired a new residence for himself and his girlfriend and has been able to pay off his debts and liabilities and reduce his living expenses, while, at the same time, providing generously for the children of his first marriage. The second judge found a marked and troublesome disparity between the parties' two households, and concluded that "the [husband's] financial circumstances have changed materially for the better since the Judgment of Divorce entered and that the [wife's] circumstances have changed materially for the worse during that same time period."

[10]We became aware of the modification judgment through a motion to expand the record on appeal filed by the husband. In that paper the husband asserted that "the question as to whether [the wife's] appeal on [the child support and alimony] issues is now rendered moot must be addressed by the . . . Appeals Court in connection and review of the underlying matters hereto."

asserts that because the wife did not seek leave from this court to proceed with her modification complaint in the Probate and Family Court during the pendency of her appeal from the underlying judgments,[11] the second judge was without authority to exercise jurisdiction over the modification action and to enter a judgment thereon. In support of his position, the husband cites cases indicating that in the absence of leave from an appellate court, a trial judge lacks jurisdiction to entertain a motion pursuant to Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), or Mass.R. Dom.Rel.P. 60(b) (2006), while the judgment is pending on appeal.[12] Since the husband's claim is a challenge to the subject matter jurisdiction of the Probate and Family Court, a matter that cannot be waived, see *Farnum* v. *Mesiti Dev.,* 68 Mass. App. Ct. 419, 422 (2007), it may be raised at any time. See *Litton Bus. Sys., Inc.* v. *Commissioner of Rev.,* 383 Mass. 619, 622 (1981); *Karbowski* v. *Bradgate Assocs., Inc.,* 25 Mass. App. Ct. 526, 527 (1988).

The rule relied on by the husband, however, relates only to motions to rehear or vacate the judgment, and does not apply to collateral or new proceedings which are separate, but not entirely divorced, from the underlying judgment. *Farnum* v. *Mesiti Dev.,* 68 Mass. App. Ct. at 423. Even though a modification action may have an effect on a divorce judgment, it may be characterized as a new proceeding, cf. *Stanton-Abbott* v. *Stanton-Abbott,* 372 Mass. 814, 816 (1977), generally arising out of new facts materially and substantially different from those found in the divorce proceeding. See *Brooks* v. *Piela,* 61 Mass. App. Ct. 731, 734 (2004); *Kelley* v. *Kelley,* 64 Mass. App. Ct. 733, 739

---

[11]At the hearing on the complaint for modification, the wife's counsel indicated that it was her understanding that leave from this court was not required, as the wife's complaint for modification was filed prior to the entry in this court of the wife's appeal from the divorce judgments. The second judge concluded that the matter was properly before her. We note that the wife *did* seek leave from this court on June 27, 2005, to file a complaint for modification seeking an award of sole legal custody of the parties' oldest child. The single justice granted the wife leave.

[12]The husband cites *Hager* v. *Hager,* 12 Mass. App. Ct. 887, 887-888 (1981), and *Springfield Redev. Authy.* v. *Garcia,* 44 Mass. App. Ct. 432, 434-435 (1998). See also *Commonwealth* v. *Cronk,* 396 Mass. 194, 197 (1985); *Wilkinson* v. *Guarino,* 19 Mass. App. Ct. 1021, 1023 n.6 (1985); *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811, 817 n.12 (1985); *Hennessey* v. *Sarkis,* 54 Mass. App. Ct. 152, 154-155 (2002).

(2005). Modification is sanctioned by statute, see G. L. c. 208, §§ 37 (alimony), 28 (child support and custody),[13] and its timing is not limited — indeed, there may be emergency or other situations when modification may be necessary without time for obtaining approval from an appellate court.

We have recognized that a complaint for modification differs from a rule 60(b) motion, and have not treated the need for approval as a jurisdictional requirement but rather a suggested practice. Thus in *Doe* v. *Roe*, 32 Mass. App. Ct. 63, 71 (1992), we stated that "the serious possibility that a modification might render at least a portion of the appeal moot" indicates that the suggested procedure — that the party seeking modification should ask "this court for leave for the trial judge to enter a modification order," see *Wilkinson* v. *Guarino*, 19 Mass. App. Ct. 1021, 1023 n.6 (1985); *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 817 n.12 (1985) — should be followed.[14] See *Hayes* v. *Lichtenberg*, 422 Mass. 1005, 1006 (1996), in which the court noted, without discussion, that the husband, by supplemental memorandum, had brought to the court's attention that a modification judgment had been entered after further appellate review had been granted. Because a modified judgment may render moot or may result in inconsistencies and, in addi-

---

[13]General Laws c. 208, § 37, provides, "After a judgment for alimony . . . , the court may, from time to time, upon the action for modification of either party, revise and alter its judgment relative to the amount of such alimony . . . and the payment thereof, and may make any judgment relative thereto which it might have made in the original action."

General Laws c. 208, § 28, provides, in part: "Upon a complaint after a divorce, . . . the court may make a judgment modifying its earlier judgment as to the care and custody of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children. In furtherance of the public policy that dependent children shall be maintained as completely as possible from the resources of their parents and upon a complaint filed after a judgment of divorce, orders of maintenance and for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines promulgated by the chief justice for administration and management or if there is a need to provide for the health care coverage of the child."

[14]In this case the complaint for modification was filed prior to the entry of the appeal. In such event, upon the entry of the appeal, the party seeking modification should seek permission to continue the proceedings.

tion, render nugatory our own, perhaps substantial, work in a case, we reiterate the need, albeit not jurisdictional, for a party seeking modification of a divorce judgment to obtain leave from this court for the Probate and Family Court to enter a modified judgment. Moreover, as pointed out in *Custody of Deborah*, 33 Mass. App. Ct. 913, 914 (1992) — and equally important in all cases, even where leave of an appellate court is neither needed (e.g., G. L. c. 119, § 26) nor obtained — "it is incumbent upon all counsel (or pro se parties), where an appeal from an earlier decision is pending, to inform the appellate court of such further orders and memoranda as are entered in subsequent proceedings" that bear on the earlier decision.[15]

4. *The wife's appeal from the divorce judgments.* The modification judgment, which we affirm in section 5, *infra*, renders moot the wife's claims as to alimony and child support.[16] We therefore turn to the other issues raised by the wife in her appeal.

a. *The property division.* The wife argues that the judge erred by "disproportionately" dividing between the parties the projected proceeds from the sale of the Sherborn property.[17] She challenges particularly the orders reimbursing the husband prior

[15]If the parties become aware that there will be consolidated appeals from the divorce judgment and the modification judgment, it is also incumbent on the parties, if time permits, to file briefs and appendices covering both judgments and winnowing the issues which are being appealed.

[16]At oral argument, we requested that the parties inform the panel in letter form what issues raised by the wife's appeal from the divorce judgments may have been rendered moot by the modification judgment. The wife's letter stated that should this court uphold the modification judgment, her alimony and child support arguments, except to the extent they might touch on college expenses and life insurance, would no longer need to be decided, and that she would be willing to waive her claims as to the divorce judgments for the period between the entry of the divorce judgments in September, 2003, and the entry of the modification judgment in June, 2005. Cf. *Hayes* v. *Lichtenberg*, 422 Mass. at 1006. In his letter, the husband merely stated that the second judge lacked jurisdiction to enter a modification judgment.

[17]Although alimony and equitable division may be interrelated remedies, see *Wheeler* v. *Wheeler*, 41 Mass. App. Ct. 743, 746 (1996); *D.L.* v. *G.L.*, 61 Mass. App. Ct. 488, 508 (2004), the wife's counsel, in response to our questions at oral argument, suggested that the issue of property division should be reviewed separately (and not in conjunction with the second judge's modified alimony award). Even if viewed discretely, there is no merit to the wife's challenge to the property division.

to the division of the proceeds for expenses he incurred in connection with the property. The judge was warranted in finding that the husband had incurred substantial debt to finance the construction and other costs of the Sherborn property and, in her discretion, could consider the parties' respective contributions to the acquisition, preservation, and appreciation in value of the marital estate. See G. L. c. 208, § 34; *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 157 (1996). The order that the husband be reimbursed for these costs was not an abuse of discretion. Similarly, the order that the wife was responsible retroactively for a portion of the Vermont expenses was proper.

b. *Additional college costs.*[18] The wife is correct that the judge erred in ordering the parties to share equally all undergraduate educational expenses for the children's college educations in excess of the educational trusts. The order for the future payment of college expenses is premature, given the relatively young age of the parties' children and the lack of special circumstances, and is to be vacated. See *Passemato* v. *Passemato*, 427 Mass. 52, 54-55 (1998); *Lang* v. *Koon*, 61 Mass. App. Ct. 22, 25-26 (2004); *Ketterle* v. *Ketterle*, 61 Mass. App. Ct. 758, 765 (2004).

c. *Life insurance.* Although couching her order as applying "[s]o long as he has any child support or alimony obligations hereunder Husband shall maintain" a life insurance policy with death benefits of at least $500,000, the policy was to be only for the benefit of the children. The husband was given the right to reduce the death benefits upon the emancipation of each of the children, and his obligation to maintain life insurance for the children was to be in lieu of any ongoing child support obligations after his death. The order as to the amount of life insurance for the children was well within the judge's discretion.

---

[18]The wife also claims that the judge, in ordering the establishment of college educational accounts for the children to be funded from the proceeds from the sale of the Sherborn property, acted contrary to the principle that interests in marital property may not be assigned to the children of the marriage. See *Levine* v. *Levine*, 394 Mass. 749, 750-751 (1985); *Johnson* v. *Johnson*, 425 Mass. 693, 694-695 (1997). Since the proceeds from the sale of the Sherborn property were insufficient to fund the educational trusts, and no additional funds will be available to establish the trusts, we need not address the wife's contentions concerning the educational accounts.

The judge made no provision for life insurance to secure the wife's alimony award. The wife claims this was error, leaving her "completely exposed" in the event of the husband's death. The husband asserts that because his alimony obligation ends with his death by the express terms of the divorce judgments, the judge properly refrained from obligating him to maintain life insurance.

The general rule in Massachusetts is that an order for the payment of alimony ceases with the death of the party obligated to pay it unless the decree or judgment provides otherwise. See *Barron* v. *Puzo*, 415 Mass. 54, 56 (1993); *Cohan* v. *Feuer*, 442 Mass. 151, 154 (2004). As explained in *Cohan*, the reasoning behind this presumption is straightforward:

> "It is because 'the marital living standard assumes the obligor's continued survival. To continue the award after the obligor's death would give the obligee a claim on the obligor's accumulated assets rather than on his post-marital earnings. Any claims on these assets will already have been satisfied by the property division made at divorce.' American Law Institute's (ALI) Principles of the Law of Family Dissolution: Analysis and Recommendations § 5.07 comment b (2002). Second, the Commonwealth and the decedent's creditors and survivors, have a strong interest in the finality of estates."[19]

*Cohan* v. *Feuer*, 442 Mass. at 154-155.

The general rule, however, does not answer the question whether life insurance is appropriate in any given case. First, our statute authorizes such insurance. General Laws c. 208, § 36, provides, in part: "When alimony or support is adjudged for the spouse or children, the court may require sufficient

---

[19]The *Cohan* court also adopted § 5.07 of the ALI Principles of the Law of Family Dissolution: Analysis and Recommendations, "as modified for consistency with current Massachusetts law, and declare[d] that an obligation to make periodic alimony payments ends automatically at the remarriage of the obligee or at the death of either party, without regard to the award's term as fixed in the decree or agreement, unless either (1) the original decree or agreement provides otherwise, or (2) in the case of the obligor's death, the court makes written findings establishing that termination of the award would work a substantial injustice because of facts not present in most cases." *Cohan* v. *Feuer*, 442 Mass. at 157-158.

security for its payment according to the judgment."[20] Moreover, an order requiring the securing of insurance is consistent with the general rule. See ALI Principles of the Law of Family Dissolution: Analysis and Recommendations § 5.07 comment b, which follows the general rule but notes that "[p]rotection against the obligor's premature death could be obtained through insurance on the obligor's life. The dissolution court could order the obligor to maintain such insurance, designating the obligee as beneficiary." In rejecting the position of some courts that "life insurance cannot be ordered because the maintenance award does not continue after the obligor's death, [see, e.g., *Waller* v. *Waller*, 163 Ohio App. 3d 303, 323 (2005)]," the Reporter's Notes to § 5.07 comment b state, "This argument proves too much. Life insurance always protects the beneficiary from the loss of a benefit that otherwise ends at the insured's death. That is its point. *The alimony obligee is in precisely the same position as the financially dependent spouse in a marriage that has continued intact — both want life insurance to protect them against the financial loss resulting from the insured's premature death*" (emphasis supplied). ALI Principles of the Law of Family Dissolution: Analysis and Recommendations § 5.07, Reporter's Notes to comment b, at 863.

Moreover, an order for life insurance, and the payment of premiums thereon, "may be seen as a component of alimony and other payment requirements." *Freedman* v. *Freedman*, 49 Mass. App. Ct. 519, 524 (2000). Premiums are paid by the support obligor during his lifetime, and upon his death, payments under the policy flow from the insurer, not the obligor's estate, to the beneficiary. There is no claim of continued payment of periodic alimony from the estate of the deceased ex-spouse. *Gallo* v. *Gallo*, 184 Conn. 36, 47 (1981). *Sobelman* v. *Sobelman*, 541 So. 2d 1153, 1153-1154 (Fla. 1989).

---

[20]This provision has been interpreted broadly so that security may consist of life insurance or death benefits from retirement funds. See *Ross* v. *Ross*, 50 Mass. App. Ct. 77, 79, 83 (2000); 2 Kindregan & Inker, Family Law & Practice § 38.22, at 683 (3d ed. 2002) (under G. L. c. 208, § 36, "court may require the alimony obligor to keep his life insured"). See also *Sobelman* v. *Sobelman*, 541 So. 2d 1153, 1153-1154 (Fla. 1989) (rejecting, under a similar statute, the argument that proceeds of a life insurance policy amount to postmortem alimony and holding that court may order purchase of life insurance to protect spouse).

Our cases recognize implicitly that a judge, in his or her discretion, may order that a party maintain life insurance as security for alimony even where the order for alimony does not continue after the support obligor's death. Cf. *Ross* v. *Ross*, 50 Mass. App. Ct. 77, 79, 83 (2000), where, although alimony was to terminate at either party's death, we upheld an order requiring the husband to provide security for child support and alimony payments by designating the wife and children as beneficiaries of either a life insurance policy or death benefits from his retirement funds.[21]

In the circumstances presented here, where the disparity in income is so marked, and the wife was only forty-one years old at the time of the trial and is unlikely ever to earn enough to maintain herself adequately, we consider it appropriate for the judge, who may have accepted the husband's reasoning that insurance is not to be ordered, to revisit the question and, if she denies the wife any security, to explain her decision.[22]

In recognition of the changes in the financial landscape brought about by the modification judgment, the judge, in exercising her discretion whether to order security for the payment of alimony, may take into account the revised support orders and the current circumstances of the parties. See *Adlakha* v. *Adlakha*, 65 Mass. App. Ct. 860, 872 (2006). The judge may also hold such additional hearing(s) as she deems appropriate.

d. *Visitation.* The judge's orders establishing weeknight overnight visitation between the husband and the children are consistent with the recommendations of the guardian ad litem and are not an abuse of discretion. We have not been informed of any modification of the visits despite the wife's seeking leave to file a complaint for modification for sole custody of the eldest child. See note 11, *supra.* As indicated in part 3 of this

---

[21]For additional cases that upheld orders for life insurance to secure alimony, but without indicating whether alimony was to continue after the death of the support obligor, see, e.g., *Wooters* v. *Wooters*, 42 Mass. App. Ct. 929, 929, 931 (1997); *Freedman* v. *Freedman*, 49 Mass. App. Ct. at 521, 524. See also *Robbins* v. *Robbins*, 16 Mass. App. Ct. 576, 579-580 (1983).

[22]In addition to the financial position of the support obligee, the judge may consider, inter alia, the cost of the insurance and the insurability of the support obligor, as well as the financial impact of the order upon the obligor. See *Stalnaker* v. *Stalnaker*, 892 So. 2d 561, 563 (Fla. App. 2005); *Wooten* v. *Wooten*, 364 S.C. 532, 550-554 (2005) (discussing statutory factors).

opinion, it was incumbent upon her to inform this court of any such order.

e. *Tax allocation.* Contrary to the wife's assertion, we do not view the court's order as to allocation between child support and alimony as a "recasting" of the temporary order, but rather as a determination of the ultimate tax allocation of the payments pursuant to the reservation set out in the temporary order.

5. *The husband's appeal from the modification judgment.*

a. *Exercise of stock options.* The husband argues that because he was awarded his stock options as part of the property division in the divorce action, see *Baccanti* v. *Morton*, 434 Mass. 787, 794-795 (2001) (both vested and unvested stock options are marital property subject to division), the second judge erred in ordering him to pay to the wife the sum of $90,142.35 as her share of the stock option proceeds exercised by him in 2004, and further obligating him to pay thirty-three percent of the proceeds received from the exercise of future stock options. In the husband's view, the second judge's orders constitute an improper reallocation of assets previously divided.[23]

In awarding the husband his stock options in the divorce judgments, the judge granted the wife a share of the proceeds from the husband's exercise of his stock options by including those proceeds in calculating his income for purposes of the alimony award (see note 4, *supra*).[24] Since the husband did not challenge by appeal the court's decision to treat as income the proceeds when exercised, and indeed does not argue in his supplemental brief in any meaningful way, see Mass.R.A.P. 16(a), 428 Mass. 1603 (1999), that they should not be so treated, or that a judge is precluded from treating stock options as income in appropriate circumstances, we decline to address the

[23]The husband's argument is inapposite to stock options received by him after the entry of the divorce judgments. Cf. *Croak* v. *Bergeron*, 67 Mass. App. Ct. 750, 758 n.16 (2006).

[24]For the treatment of stock options, see generally 2A Kindregan & Inker, Family Law & Practice § 41.23, at 125 (3d ed. 2002), where the authors note that "[w]hile most courts have treated stock options as property interest[s] to be divided when exercisable, a few cases have instead treated them as potential or attributed income for purposes of child support or alimony." See, e.g., *In re Marriage of Robinson*, 201 Ariz. 328, 332-333 (Ct. App. 2001); *Seither* v. *Seither*, 779 So. 2d 331, 333-334 (Fla. Ct. App. 1999); *Murray* v. *Murray*, 128 Ohio App. 3d 662, 665-670 (1999).

issue.[25] We also decline to address arguments made at oral argument but not made in the husband's briefs. As to the percentage awarded to the wife, we consider that the second judge's findings on the change in circumstances justify the increased amount.

b. *Excessive amount of support.* The husband urges that the second judge erred in awarding the wife as alimony and child support forty-three percent of his base salary plus thirty-three percent of all bonus and incentive income without consideration of his first family expenses of approximately $120,000 per annum. In fashioning the modified support orders, the second judge considered the parties' respective financial positions, including the fact that the husband's total income from employment increased from $521,911.20 in 2003, the year of the divorce, to $831,443.67 in 2004 and that the husband had received income from employment of $481,366.61 through the first five months of 2005. Contrary to the husband's assertion, the second judge considered both in her findings and rationale the husband's payment of the college expenses of two children of his first marriage. She also noted that the husband intended to pay for his daughter from his first marriage to spend time in London and to assist his older son from the prior marriage in attending graduate school. Although the second judge did not refer specifically in her findings to the husband's payment of support to his first wife, she made reference to the husband's "expenses," which, on his financial statement, include his weekly support payment to his first wife. The second judge was clearly aware of the husband's obligation to his first wife.

c. *Erroneous findings.* Upon review of the record, we are satisfied that the findings of fact challenged by the husband are supported by the evidence and are not clearly erroneous. To the extent there was disputed evidence, the judge was entitled to make determinations of credibility. See Mass.R.Dom.Rel.P. 52(a).

6. *Summary.* The wife's appeal from the judgments of divorce

---

[25]The husband's additional argument based on a temporary order is without merit. The second judge had authority to modify the temporary order in view of her finding, among others, that the husband could "well afford to pay more in support to the [wife] and children and that an increase in support [was] warranted."

nisi in so far as they relate to alimony and child support have become moot through the modification judgment and the wife's responses to our request. See note 16, *supra.* The provisions of the judgments ordering the parties to share equally expenses for the children's future college educations are vacated. The matter is remanded to the Probate and Family Court for consideration whether life insurance (or other form of security) is appropriate to secure the husband's alimony obligation to the wife and, if appropriate, the entry of an order thereon. In all other respects, the judgments of divorce nisi are affirmed.

The "modification judgment and judgment on complaint for contempt" is affirmed. The order on the motion for clarification and to amend the modification judgment is affirmed.

*So ordered.*