NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-540                                              Appeals Court

ZOË TIBERIUS QUINN[1]  vs.  ERON GJONI.

No. 15-P-540.

Suffolk.     March 18, 2016. - May 19, 2016.

Present:  Milkey, Agnes, & Meade, JJ.

Abuse Prevention.  Protective Order.  Practice, Civil, Appeal,
    Moot case.  Jurisdiction.  Moot Question.

Complaint for protection from abuse filed in the Dorchester
Division of the Boston Municipal Court Department on September
16, 2014.

A hearing to extend an abuse prevention order was had
before Serge Georges, Jr., J., and a motion to vacate the order
was heard by James W. Coffey, J.

Jeffrey G. Harris for the defendant.
Felicia H. Ellsworth (Tasha J. Bahal & Daniel C. Wewers
with her) for the plaintiff.
Daniel J. Lyne & Theodore J. Folkman for Eugene Volokh &
another, amici curiae, submitted a brief.

_____

[1] Prior to this appeal, the plaintiff's legal name was
Chelsea Van Valkenburg.  During the appeal, she changed her name
to Zoë Tiberius Quinn, the name she had already begun using
professionally.

MILKEY, J.  The plaintiff, Zoë Quinn, obtained an abuse prevention order against her ex-boyfriend, Eron Gjoni.  That order included a provision restricting Gjoni's ability to post information about Quinn online.  On appeal, Gjoni principally argues that this provision impermissibly interfered with his rights pursuant to the First Amendment to the United States Constitution, and he urges us to reach those arguments even though the order is no longer in effect.  For the reasons set forth below, we decline to do so.

Background.  Quinn is a designer of video games who -- as both parties appear to agree -- has become a controversial figure in gaming circles.  The parties dated for several months.  In seeking an abuse prevention order pursuant to G. L. c. 209A, § 3, Quinn alleged that Gjoni abused her in various respects, including through being violent toward her on one occasion.  She also alleged that after she and Gjoni broke up, he published online a lengthy screed that included highly personal information about her, and that this in turn incited many third parties to harass her, including through making numerous "death and rape threats" to her.  Gjoni concedes that he posted information about Quinn online, and he does not appear to contest that third parties have heaped significant abuse on her.  Rather, the parties appear to dispute the extent to which Gjoni

should be deemed legally responsible for causing the third parties to act as they have.[2]

Quinn originally obtained the abuse prevention order (order) at an ex parte hearing held in the Dorchester Division of the Boston Municipal Court on September 16, 2014. Specifically, the judge ordered Gjoni not to abuse or contact Quinn, and to stay away from her residence and workplace. In order to address Quinn's allegations that Gjoni was inciting others to threaten and harass her through his online posts, the judge also ordered Gjoni "not to post any further information about [Quinn] or her personal life online or to encourage 'hate mobs.'" For simplicity, we will refer to this provision as the "no posting requirement."

After Gjoni was notified of the order, an evidentiary hearing was held on September 30, 2014, before a second judge. In response to Gjoni's counsel having indicated his desire to cross-examine Quinn, the judge peremptorily stated "[t]here's going to be no cross-examination of the plaintiff." Gjoni himself was present at the hearing but did not testify. When

---

[2] Quinn acknowledged that Gjoni was not "directing" the third parties to harass her, but she alleged that he nevertheless was distributing the information online in a manner that he knew would have that effect (e.g., by specifically targeting the information to groups or people that he knew were already hostile to Quinn). Gjoni denied any conscious effort to harm Quinn, and asserted a First Amendment right to comment about her.

the judge signaled his intention to extend the order for another year, Gjoni's counsel attempted to argue that the scope of the existing order infringed on his client's First Amendment rights. The judge declined to consider the issue, stating, "Counsel, I'll leave that to your appellate rights." Gjoni filed a timely appeal, which was docketed in this court on April 21, 2015.

On August 13, 2015 -- while the appeal was pending -- Quinn filed a motion in the trial court seeking to have the order vacated in its entirety. According to Quinn, "the existence of [the] Order, and Mr. Gjoni's appeal of it, is in fact exacerbating her situation by allowing Mr. Gjoni to continue to draw attention to himself, and as a result [to her], which has the direct effect of increasing the harassment and threats she suffers." On August 28, 2015, after a hearing, a third judge terminated the order and directed law enforcement agencies to destroy all records of it.[3] See G. L. c. 209A, § 7, third par., as appearing in St. 1990, c. 403, § 8 ("The court shall notify the appropriate law enforcement agency in writing whenever any such order is vacated and shall direct the agency to destroy all

_____

[3] In June, 2015, Gjoni had filed with the Supreme Judicial Court a petition for direct appellate review (DAR) in which he highlighted his claim that the no posting requirement raised First Amendment concerns. In response to that petition, Quinn informed the Supreme Judicial Court that she intended to have the order vacated in the trial court because it was not serving to protect her. After the third judge terminated the order, the Supreme Judicial Court denied Gjoni's DAR petition.

record of such vacated order and such agency shall comply with that directive").

In his appellate brief, Gjoni principally argues that the no posting requirement violated his First Amendment rights and that this requirement was, at a minimum, overly broad.[4] In her brief, Quinn did not address the underlying merits, but instead argued solely that Gjoni's appeal should be dismissed on the ground that the case has become moot. In reply, Gjoni argued that the case is not fully moot and that, in any event, this court should reach the merits. In this vein, Gjoni pointed out that as of the date his reply brief was filed, he was facing a criminal prosecution for allegedly violating the no posting requirement before it had been terminated. A subsequent filing revealed that the District Attorney since has issued a nolle prosequi of that case.

Discussion. 1. We begin by addressing the threshold question of whether the third judge had authority to terminate the order while the appeal was pending.[5] Ordinarily, once an appeal has been docketed, the trial court lacks jurisdiction to modify the judgment being appealed. See Springfield Redev.

_____

[4] Gjoni's First Amendment arguments are supported by an amicus brief submitted by two law professors, Eugene Volokh and Aaron H. Caplan.

[5] We raised this question sua sponte prior to oral argument.

Authy. v. Garcia, 44 Mass. App. Ct. 432, 434-435 (1998), citing

Commonwealth v. Cronk, 396 Mass. 194, 197 (1985).  We agree with

Quinn's argument that this rule does not apply in the sui

generis context of c. 209A abuse prevention orders.  Pursuant to

statute, an abuse prevention order that has been issued can be

modified "at any subsequent time."  G. L. c. 209A, § 3(i), as

appearing in St. 2000, c. 236, § 23.  This provision serves to

protect victims of abuse by allowing them to tailor the terms of

abuse prevention orders as (often rapidly) developing

circumstances may warrant.  See Guidelines for Judicial

Practice: Abuse Prevention Proceedings § 5:08 commentary, at

2011 (Sept. 2011) (Guidelines) ("A victim of [domestic] abuse is

in the best position to decide what course of action will

provide more safety.  At a given time, an abuse prevention order

might exacerbate the plaintiff's danger").[6]  With the parties

having a recognized statutory right to seek modification of

existing orders, it follows that a pending appeal of a 209A

order does not deprive the trial court of its ability to modify

the order.[7]  Compare Braun v. Braun, 68 Mass. App. Ct. 846, 852-

_____

[6] It is also worth noting that, unlike the usual civil case
in which a single final judgment brings the trial court
proceedings to a conclusion, a c. 209A proceeding typically is
made up of a series of discrete, time-bound orders.

[7] See McCarthy v. O'Connor, 398 Mass. 193, 196-197 (1986)
(where the rules of appellate procedure expressly allow a trial
court in some circumstances to dismiss an untimely appeal, the

854 (2007) (recognizing the ability of a divorce litigant to pursue a modification complaint while an appeal of the original judgment is pending). Of course, litigants should keep appellate courts apprised of any relevant ongoing proceedings (as the parties to this case laudably did here), and, if time permits, seek leave of the appellate court to modify the order under review. See id. at 853-854.[8]

2. We next turn to Quinn's argument that this case is now moot and that we should simply dismiss it as such. As noted, Gjoni seeks to press on appeal his claim that the no posting requirement infringed on his First Amendment rights. At this time, neither party retains anything but an academic interest in those issues, which go to the scope of the now terminated order. We therefore decline to reach them. See Ott v. Boston Edison Co., 413 Mass. 680, 685 (1992) ("This court should not encourage the appellate pursuit of an issue . . . in which the appellant's only appropriate interest is academic"). The rule against deciding moot questions applies with particular force where, as

_____

trial court retains jurisdiction to do so even after an appeal has been docketed in the appellate court).

[8] In Braun v. Braun, we recognized that even in the context of modifications to divorce judgments, "there may be emergency or other situations when modification may be necessary without time for obtaining approval from an appellate court," and we expressly held that the failure of a party to obtain leave from the appellate court does not deprive the trial court of jurisdiction. Id. at 853-854.

here, the dispute turns on constitutional issues. M.C. v.
Commissioner of Correction, 399 Mass. 909, 912 (1987), citing
Lockhart v. Attorney Gen., 390 Mass. 780, 784 (1984).

Gjoni argues that we nevertheless should reach his First
Amendment arguments because he continues to face the theoretical
possibility of a criminal prosecution for allegedly having
violated the no posting requirement while it was in effect. We
disagree. Generally, whether the terms of an abuse prevention
order went too far has no bearing on whether someone could be
prosecuted for violating it. See Commonwealth v. Marrero, 85
Mass. App. Ct. 911, 912 (2014) ("As a general rule the defendant
does not have the option to act in violation of a court order
and then, in a subsequent criminal proceeding, assert as a
defense that the order should not have been issued"). See also
Mohamad v. Kavlakian, 69 Mass. App. Ct. 261, 264 (2007) ("Even
if erroneous, a court order must be obeyed"). Even where the
person subject to the court order claims it is invalid on First
Amendment grounds, he generally can be prosecuted for a
violation of the order regardless of its validity. See Matter
of Providence Journal Co., 820 F.2d 1342, 1346-1347 (1st Cir.
1986), cert. dismissed, 485 U.S. 693 (1988).[9]

_____

[9] Citing to language in Walker v. Birmingham, 388 U.S. 307,
316 (1967), the First Circuit held that an order prohibiting a
newspaper from publishing certain information regarding the
plaintiff's deceased father was such a "transparently invalid

Additionally, Gjoni argues that we should reach his First Amendment arguments because they present issues that are "of public importance, capable of repetition, yet evading review." Superintendent of Worcester State Hosp. v. Hagberg, 374 Mass. 271, 274 (1978). While it may well be true that these issues are likely to arise again, we are unpersuaded that, if so, they will evade appellate review. We also note that in circumstances where an appellate court has exercised its discretion to reach an issue that is moot, it appears generally that the court has done so only where the parties have fully briefed the merits of that issue. See, e.g., Brach v. Chief Justice of the Dist. Ct. Dept., 386 Mass. 528, 533 (1982) (deciding against dismissal, even though case was moot, because issues were fully argued by both sides). See generally Lockhart v. Attorney Gen., supra at 783-784 (discussing the factors assessed in ruling on moot cases). Here by contrast, Quinn has not briefed the First

---

. . . prior restraint on pure speech" to be void (not merely voidable), thus fitting an exception to the general rule that one can be prosecuted for violating an order even if it runs afoul of the First Amendment. Matter of Providence Journal Co., supra at 1345, 1347, 1353. In any event, any contention that the no posting requirement was void (and not merely voidable) could be raised by Gjoni in the unlikely event that he faced a new prosecution for allegedly having violated the now vacated order. Conversely, whether the no posting requirement was void would have no place in the current appeal even if we were to agree with Gjoni that the scope of this provision was too broad.

Amendment issues at all, a fact that is unsurprising given that she lacks any concrete interest in those issues going forward.[10]

3.   Although Gjoni principally focuses on his First Amendment claims, he does make some additional arguments.  Most prominently, he argues that the second judge extended the ex parte order without providing him adequate process.[11]  Unlike his First Amendment claims, his additional arguments go to whether the order was properly issued.  As to those arguments, there is language in the case law involving expired abuse prevention

_____

[10] We note that the First Amendment issues were not moot when Gjoni attempted to raise them in the trial court.  While we fully appreciate the difficulties of seeking to harmonize such interests with the countervailing interest of trying to protect Quinn from the uncontested deluge of harassment that she faced, it was not appropriate for the second judge to decline even to consider such issues.  See Care & Protection of Edith, 421 Mass. 703, 705-706 (1996) (trial court judges have a duty to address the First Amendment implications of court orders by making specific findings).  See also Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 713-714 (1990) (discussing a judge's obligations in issuing an injunction implicating protected First Amendment activities).

[11] A judge enjoys substantial discretion in crafting how a c. 209A evidentiary hearing is to proceed.  Thus, even though a defendant in a c. 209A proceeding has a general right to cross-examine the plaintiff, a judge may place limits on cross-examination if warranted by the circumstances.  See Frizado v. Frizado, 420 Mass. 592, 597-598 (1995); Silvia v. Duarte, 421 Mass. 1007, 1007-1008 (1995).  However, a judge must in any event provide each side "a meaningful opportunity to challenge the other's evidence."  Frizado v. Frizado, supra at 598 n.5, quoting from District Court's Draft Standards of Judicial Practice, Abuse Prevention Proceedings § 5:01 (Dec., 1994).  Gjoni argues that the second judge's flat prohibition on cross-examination deprived him of that opportunity.

orders that provides him some support for claiming that a portion of his appeal remains live.[12] However, as in Allen v. Allen, 89 Mass. App. Ct. _____ (2016), the order under appeal here did not merely expire but has been vacated,[13] and copies of the abuse prevention order possessed by law enforcement officials were ordered destroyed. The defendant therefore has obtained all the relief to which he could be entitled,[14] and he no longer has a cognizable interest in whether the order was

---

[12] See, e.g., Wooldridge v. Hickey, 45 Mass. App. Ct. 637, 638 (1998) (because abuse prevention orders have important collateral consequences, even after such an order has expired, a defendant "has a surviving interest in establishing that the orders were not lawfully issued").

[13] While the judge marked the order as having been "TERMINATED," the docket itself refers to the order as having been "VACATED" (consistent with how Quinn phrased the relief she requested in her motion). As this case illustrates, in the context of c. 209A orders, trial courts use "vacate" and "terminate" interchangeably. See Guidelines § 1:00, at 8-9 (discussing case law that uses both "terminate" and "vacate" to mean "terminat[ing] [an order] upon motion of either party").

[14] Even if we were to hear this appeal and to conclude that Gjoni was not given adequate process, he still would not be entitled to have the order expunged from the Statewide registry of domestic violence. The case law has long established that someone in Gjoni's position is not entitled to such relief except "in the rare and limited circumstance that the judge has found through clear and convincing evidence that the order was obtained through fraud on the court." Commissioner of Probation v. Adams, 65 Mass. App. Ct. 725, 737 (2006). See Vaccaro v. Vaccaro, 425 Mass. 153, 155-159 (1997); Smith v. Jones, 67 Mass. App. Ct. 129, 137-138 (2006). Gjoni has not argued that such exceptional circumstances are present here, and, in any event, nothing in the record suggests that Quinn committed a fraud on the court.

lawfully issued.  See ibid.  Cf. Almahdi v. Commonwealth, 450 Mass. 1005, 1005 (2007) (in criminal case, issuance of nolle prosequi rendered bail review appeal moot).  Therefore, we dismiss the entire appeal as moot.

So ordered.