NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-409                                        Appeals Court


ELIZABETH  GASSMAN  vs.  KINZY REASON.


No. 15-P-409.

Suffolk.     May 10, 2016. - August 11, 2016.

Present:  Grainger, Hanlon, & Agnes, JJ.


Civil Harassment.  Protective Order.  Practice, Civil, Moot
     case.



Complaint for protection from harassment filed in the
Brighton Division of the Boston Municipal Court Department on
June 13, 2013.

The case was heard by David T. Donnelly, J., and hearings
to extend a harassment prevention order were had before Thomas
S. Kaplanes, J., and Patricia E. Bernstein, J.


Jillise McDonough for the defendant.


HANLON, J.  The defendant, Kinzy Reason, appeals from the

extension of a harassment prevention order issued pursuant to

G. L. c. 258E, in the Brighton Division of the Boston Municipal

Court.  She argues that the order was improperly issued and

wrongly extended.  After a review, we are satisfied that,

despite the fact that the order has now expired, the issue is not moot and therefore is properly before us. In addition, we agree that the order should not have been extended.[1]

Background. The parties lived in the same public housing complex in Brighton; the plaintiff, Elizabeth Gassman, lived in an apartment on the third floor of the building, and Reason lived on the second floor in the apartment directly below Gassman's apartment. Apparently, Gassman played the piano frequently and her playing was a source of considerable irritation for Reason.

On June 13, 2013, Gassman sought an ex parte harassment prevention order against Reason, pursuant to G. L. c. 258E.[2]

_____

[1] The propriety of the extension is the only issue presented to us.

[2] In support of her application, Gassman submitted the following affidavit:

"She called the police to complain[ ] about my playing the piano before [nine] pm at night. She had previously [banged] on my door demanding that I stop playing because 'I need my rest.' She complained many times. Boston noise ordinance measured the [decibels] and found I was within legal limit.

"On 10/18/10 I complained to police about her bothering me over and over and how upsetting it was because it made me fearful. I have been diagnosed with an anxiety disorder and fear confrontation and [violence] from [her].

"On April 25, 2013[,] she called the police and complained that I had pushed her. An assault and battery complaint was issued and I was ordered to appear at a Clerk Magistrate hearing. It was dismissed but I am fearful that

There was a short hearing; the judge asked several questions about a prior proceeding,[3] and then Gassman was sworn.  The judge asked her, "Are you in fear of your safety?"  Gassman responded, "Yes."  The judge also asked some questions about the relative locations of the parties' apartments, the placement of the building elevator and the laundry room, and the location of a music school that Gassman was attending.  After the hearing, the judge issued an ex parte order, ordering Reason to stay ten yards away from Gassman when in the building where both parties lived, not to enter the third floor of the building, to stay fifty yards away when outside the building, and to stay away from Gassman's music school.  A hearing after notice was scheduled for June 25, 2013.

The hearing apparently was held before the same judge and he extended the order for a year.  According to an entry on the order, Reason was present; the record does not contain a transcript of that hearing or any indication of what testimony or other evidence the judge heard.

---

she will harass me again.  The stress of going through this made me so anxious that my life was derailed for an entire month."

[3] After a review of the entire record, it appears likely that the prior proceeding mentioned was the hearing where the defendant unsuccessfully sought a complaint against the plaintiff for assault and battery.

At the end of the year, Gassman again sought to extend the order, this time before a different judge.  In response to the judge's question about what Gassman wished to do, she replied that she wished to report a violation of the existing harassment order and offered police reports.  She also told the judge that she wanted the harassment order extended and that Reason "be evicted for six years of unrelenting harassment of [her]." Gassman told the judge that Reason had "called the police on [her] four -- to [her] door four times for playing the piano."[4] She complained that the defendant had violated the order by "standing smack in front of the elevator door," forcing the plaintiff to walk by "within six inches of her."  Gassman finished by saying, "After that, the only time she complied with the -- When we encountered each other, all of which were chance encounters because that's life, I'm not following her, she's not following me."

Nonetheless, Gassman maintained that Reason was a danger to her and, when the judge asked why, she responded,

> "Because . . . she lied to the police.  She's lied to
> the BHA.  She's lied in a civil rights complaint.  She
> is capable of making up any story that suits her and
> she is determined to do harm to me.  It started when
> she moved in the building, the first week she lived

_____

[4] The judge explained to Gassman -- several times -- that he could not evict the defendant from her apartment at that hearing.  Gassman repeatedly interrupted the judge each time he either asked a question or tried to explain the process.

there, in 2009 when she started going to the office complaining I was playing the piano.  I have a noise measurement report from the [c]ity of Boston.  It was done at my request."

Judge:  "Okay."

Plaintiff:  "That measures the sound in her apartment as [forty-eight] decibels or below, far below the [seventy-eight] decibels allowed by law.  Despite being given that report, she called the police to my door four times . . . in the next years, complaining about I was disturbing the peace.  On not a single occasion did the police find me violating the -- disturbing the peace, and in fact they apologized for disturbing me."

Judge:  "Okay."

Plaintiff:  "Then we had a period when I didn't hear from her, and then suddenly last year I get an assault and battery charge.  I walked by her in the hallway, absolutely nothing took place, and the next thing I know, four weeks later I get a summons to appear in court on an assault and battery charge.  She also filed a civil rights . . . "

Judge:  "So you're telling me --"

Plaintiff:  "complaint --"

Judge:  "you've never --"

Plaintiff:  "I --"

Judge:  "physically --"

Plaintiff:  "I've never --"

Judge:  "assaulted her?"

Plaintiff:  "done a thing to her.  The --"

Judge:  "Has she ever physically assaulted you" (emphasis supplied)?

Plaintiff: "No (emphasis supplied).  It's -- But I'm [sixty-five] years old. I don't know if I have two years left or [ten] years left.  I can't spend them constantly defending myself against her false and meritless complaints about my playing the piano, about my -- by accusations of assaulting me.  She can make up anything.  She can do anything to me and all I can do would be to dragged into court and --"

Judge:  "Right."

Plaintiff:  "defend myself.  It's a situation I can't control."

The judge then inquired of Reason's counsel about the defendant's position.  She replied that the earlier order should not have issued and the judge responded that it was too late for that.  An exchange followed about the proper procedure for making a complaint about noise -- that is, whether it should be made to the Boston Housing Authority or to the manager of the property.  The judge asked to be shown "that there has been a legitimate noise disruption. . . .  I still am not hearing that there's any -- other than a self-serving letter that says there's noise, who else is saying that there's noise?"

After more discussion about noise, Reason's counsel asked to have the order vacated, arguing that her client also had been harassed by the plaintiff, but that she did not wish to escalate the situation and therefore did not seek a harassment protection order on her own behalf.  Reason then testified that the constant noise had caused her great suffering and that she had done what she could do to obtain emergency housing elsewhere.

She also stated that she had never threatened the plaintiff or insulted her or sought any contact with her since the original order issued. The judge asked the clerk for a six-month date, with the plaintiff continually interrupting him again. He cautioned both parties that he could not prevent inadvertent contact between them and extended the order for six months. Reason timely appealed. In the interim, on December 23, 2014, a third judge of the Boston Municipal Court extended the order until June 23, 2015. The order appears to have expired on that date. There is no indication that a judge ever ordered the harassment prevention order terminated, or vacated, or that there ever was any order "to the appropriate law enforcement agency," pursuant to G. L. c. 209A, § 7, as appearing in St. 1990. c. 403, § 8, "to destroy all records of such order."

Discussion. We consider first whether this appeal of the harassment order that expired on June 23, 2015, is now moot.[5]

---

[5] Reason did not appeal from the order issued after notice, that is, the second hearing, for which we have no transcript. We note that she claims that she was never told that she had a right to appeal. In any event, she has not waived her right to appeal this extension of that order. See Smith v. Jones, 75 Mass. App. Ct. 540, 544 (2009), quoting from Smith v. Jones, 67 Mass. App. Ct. 129, 133-134 (2006), where, notwithstanding the propriety of the issuance of the original order in that case, we vacated the extension, holding that, in order to obtain an extension, a plaintiff must make the same showing as required in the initial hearing, and that "no presumption arises from the fact that a prior order has issued; it is the plaintiff's burden to establish that the facts that exist at the time extension of the order is sought justify relief."

The law is clear that it is not.  See <u>Seney</u> v. <u>Morhy</u>, 467 Mass. 58, 62 (2014), where the court concluded that:

> "appeals from expired harassment prevention orders, like appeals from expired abuse prevention orders, should not be dismissed as moot where the parties have a continuing interest in the case.  See <u>Wooldridge</u> v. <u>Hickey</u>, 45 Mass. App. Ct. 637, 638 (1998) (party challenging legality of abuse prevention orders has 'a surviving interest in establishing that the orders were not lawfully issued, thereby, to a limited extent, removing a stigma from his name and record').  '[A] wrongfully issued harassment prevention order [pursuant to G. L. c. 258E] poses the same concerns for a defendant about collateral consequences as does a wrongfully issued abuse prevention order [issued pursuant to G. L. c. 209A].'  <u>Lawrence</u> v. <u>Gauthier</u>, 82 Mass. App. Ct. 904, 904-905 (2012)."

Our recent decisions, in <u>Allen</u> v. <u>Allen</u>, 89 Mass. App. Ct. 403 (2016), and <u>Quinn</u> v. <u>Gjoni</u>, 89 Mass. App. Ct. 408 (2016), are not to the contrary.  In each of those cases, the challenged order had not expired, but, rather, had been terminated by a judge.  In <u>Allen</u>, <u>supra</u> at 303, we said, "termination of the ex parte order at the hearing after notice, accompanied by an order directing law enforcement agencies 'to destroy all record of such vacated order,' renders the defendant's appeal moot.  G. L. c. 209A, § 7, as appearing in St. 1990, c. 403, § 8."  In <u>Quinn</u>, <u>supra</u> at 414, citing <u>Allen</u>, <u>supra</u>, we concluded that, "the order under appeal here did not merely expire but has been vacated, and copies of the abuse prevention order possessed by law enforcement officials were ordered destroyed.  The defendant therefore has obtained all the relief to which he could be

entitled, and he no longer has a cognizable interest in whether the order was lawfully issued."

In this case, by contrast, the order simply expired at the end of the extension period and this defendant has neither a judicial termination of the order nor an order that law enforcement should destroy all copies of it. We therefore proceed to the merits, considering whether the order was properly extended.

Harassment. In reviewing a civil harassment prevention order, we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant had committed "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property." Seney, supra at 60, quoting from G. L. c. 258E, § 1, inserted by St. 2010, c. 23. See O'Brien v. Borowski, 461 Mass. 415, 420 (2012), quoting from G. L. c. 258E, § 1. ("[T]he acts of harassment must be wilful and '[m]alicious,' the latter defined as 'characterized by cruelty, hostility or revenge,' and they must be committed with 'the intent to cause fear, intimidation, abuse or damage to property.' . . . Second, the multiple acts of civil harassment must 'in fact cause fear, intimidation, abuse or damage to

property'").  See also Petriello v. Indresano, 87 Mass. App. Ct.
438, 444 (2015).

In Seney, supra at 63, quoting from O'Brien, supra at 423
and 425, the court reiterated that "an essential element of
civil harassment is intent.  Conduct may constitute civil
harassment where an individual wilfully and maliciously uses
'fighting words' that are 'a direct personal insult addressed to
a person' and 'so personally abusive that they are plainly
likely to provoke a violent reaction and cause a breach of the
peace,' . . . or uses 'true threats,' such as 'words or actions
that -- taking into account the context in which they arise --
cause the victim to fear such harm now or in the future.'"  The
conduct must have been intended to cause, and must actually
cause, abuse (defined as "attempting to cause or causing
physical harm to another or placing another in fear of imminent
serious physical harm"), intimidation, fear of personal injury,
or damage to property.  O'Brien, supra at 427, quoting from
G. L. c. 258E, § 1 (individual must "willfully commit[] three or
more acts aimed at a specific person, each with the intent to
cause fear, intimidation, abuse, or damage to property").  The
target of the harassment must have experienced an "entire course
of harassment," the whole of which caused fear or intimidation
amounting to more than "a fear of economic loss, of unfavorable

publicity, or of defeat at the ballot box." O'Brien, 461 Mass. at 426 n.8, 427.

Civil harassment cases present a significant challenge in busy municipal and district courts, as the record in this case illustrates. Applications for such orders are filed by feuding neighbors, as here; expressive bar patrons, see id. at 415; angry hockey or baseball parents, see Seney, 467 Mass. at 58; and contentious roommates, see Smith v. Mastalerz, 467 Mass. 1001 (2014), among others. The inclination to issue an order for the parties to stay away from one another, concluding that such an order cannot do any harm, is understandable. Nonetheless, harassment prevention orders issued pursuant to G. L. c. 258E carry significant collateral consequences for a defendant, consequences that cannot be undone completely, even when a court later determines that the order should not have issued in the first place. See Quinn, 89 Mass. App. Ct. 413-414 & n.13.

In addition, at least since O'Brien, the law has been clear that the term "harass" has a specific definition in this context, derived from the statute and case law, a definition much more exacting than common usage. In the context of a harassment order pursuant to G. L. c. 258E, "[t]he plaintiff bears the burden of proving that each of the three qualifying acts was maliciously intended, defined by G. L. c. 258E, § 1, as

being 'characterized by cruelty, hostility or revenge.'" A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015), quoting from O'Brien, supra at 427. In addition, while the "'true threat' doctrine applies not only to direct threats of imminent physical harm, but to words or actions that -- taking into account the context in which they arise -- cause the victim to fear such harm now or in the future and evince intent on the part of the speaker or actor to cause such fear," O'Brien, supra at 425, the consistent element required is an intent to cause fear. Contrast, Webster's Third New International Dictionary 1031 (2002) ("Harass" in normal usage means "to vex, trouble or annoy continually or chronically [as with anxieties, burdens, or misfortune]").

Gassman testified more than once that Reason's actions caused her to be afraid for her personal safety. The judges apparently credited that testimony and, under the case law, there is no reasonable person test for judging that fear. That is, the question is only whether Gassman in fact was placed in fear, not whether the fear was reasonable. See O'Brien, 461 Mass. at 420. However, as the court stressed in Seney, 467 Mass. at 62, a plaintiff also must prove that the defendant acted with intent to cause fear, intimidation, abuse, or damage to property.

Despite the fact that the order in this case was issued or extended by three different judges, there simply is no evidence that Reason intended to cause any harm at all to Gassman, much less that she wilfully committed three or more acts, aimed at Gassman, each with the intent to cause fear, intimidation, abuse, or damage to property. There is no evidence of a true threat or of fighting words. Nor can repeated complaints about noise from the upstairs apartment reasonably be described as intimidation, intending to cause fear of physical harm or damage to property. Contrast A.T. v. C.R., 88 Mass. App. Ct. at 536 ("The threat to make the plaintiff's life a living hell clearly was intimidation"). In addition, a single application for a complaint against the plaintiff alleging an assault and battery, even though dismissed, cannot credibly be described as an act of harassment as that term is defined in the case law, at least under the circumstances of this case. Even considering as a whole the interaction between these two women in the same apartment building over a period of years, we are satisfied that there was insufficient evidence to support the second extension of the harassment prevention order.

The order extending the harassment prevention order is vacated, and the case is remanded to the Brighton Division of

the Boston Municipal Court for proceedings consistent with this opinion.[6]

So ordered.

---

[6] We note, as we did in Quinn, 89 Mass. App. Ct. at 414 n.14, that:

"[t]he case law has long established that someone in [the defendant's] position is not entitled [to have the order expunged from the defendant's record] except 'in the rare and limited circumstance that the judge has found[,] through clear and convincing evidence[,] that the order was obtained through fraud on the court.' Commissioner of Probation v. Adams, 65 Mass. App. Ct. 725, 737 (2006). See Vaccaro v. Vaccaro, 425 Mass. 153, 155-159 (1997); Smith v. Jones, 67 Mass. App. Ct. at 137-138. [The defendant] has not argued that such exceptional circumstances are present here, and, in any event, nothing in the record suggests that [the plaintiff] committed a fraud on the court."