NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1648                                         Appeals Court


V.J.  vs.  N.J.


No. 15-P-1648.

Plymouth.     October 11, 2016. - January 30, 2017.

Present:  Meade, Milkey, & Kinder, JJ.


Civil Harassment.  Harassment Prevention.  Constitutional Law,
     Freedom of speech and press.


     Civil action commenced in the Brockton Division of the
District Court Department on September 25, 2015.

     The case was heard by Julie J. Bernard, J.


     Michael P. Friedman for the defendant.


     MEADE, J.  The defendant, N.J. (defendant), appeals from

the extension of a G. L. c. 258E civil harassment prevention

order, which prohibited any contact between him and the

plaintiff, V.J. (plaintiff).  The parties are not related.  The

order at issue expired on October 7, 2016.[1]  On appeal, the

_____

     [1] The expiration of the harassment prevention order does not
render this case moot.  See Seney v. Morhy, 467 Mass. 58, 62
(2014); Gassman v. Reason, 90 Mass. App. Ct. 1, 6-7 (2016).

defendant claims that the judge did not find, and could not properly have found, that there were at least three separate incidents by which he intentionally placed the plaintiff in fear, intimidated her, or otherwise abused her.  We affirm.

1.  Background.  On September 25, 2015, pursuant to G. L. c. 258E, §§ 3 and 5, the plaintiff obtained an ex parte harassment prevention order against the defendant.  The order was set to expire on October 9, 2015, and a hearing was set down for that date regarding an extension of the order.  After an evidentiary hearing at which both parties testified, a judge of the Brockton Division of the District Court Department extended the harassment prevention order to October 7, 2016, and found the following facts, which are supplemented by the plaintiff's affidavit in support of the harassment prevention order and her testimony, which the judge explicitly found to be credible.

Beginning in 2011, the defendant, a passenger on a Massachusetts Bay Transportation Authority (MBTA) bus operated by the plaintiff, made numerous attempts to "court" her; all were rebuffed.  These attempts made her feel uncomfortable and she feared the defendant.  The plaintiff identified a pattern of harassment between 2012 and 2015, including an incident occurring on June 10, 2012, while she was on a break at an MBTA station, in which the defendant approached her from behind and grabbed her across her chest in a "bear hug," in the manner of

one intending to "abduct somebody."  The plaintiff "had to pry his arms from around [her]."  This made her "very fearful" of the defendant.[2]  Although she did not file a police report, the plaintiff did report the incident to her supervisor at the MBTA, as she was in full uniform on MBTA property when the incident took place.[3]

On July 1, 2012, the defendant boarded the bus the plaintiff was driving.  Soon after the bus departed, the defendant attempted to apologize for having grabbed her on June 10, 2012.  She did not accept his apology and told the defendant that if he had to ride on her bus route, he should just pay his fare and not communicate with her.  Upon hearing this, the

---

[2] The plaintiff was also fearful of the defendant because of his criminal record with the MBTA police, but the appellate record reflects no specifics about his criminal record.  We note that G. L. c. 258E, § 9, inserted by St. 2010, § 23, provides, in pertinent part, "When considering a complaint filed under this chapter, the court shall order a review of the records contained within the court activity record information system and the statewide domestic violence recordkeeping system, as provided in chapter 188 of the acts of 1992 and maintained by the commissioner of probation, and shall review the resulting data to determine whether the named defendant has a civil or criminal record involving violent crimes or abuse."  It is therefore a fair inference that the judge had an opportunity to review the defendant's criminal record at the time of the hearing.  However, the judge made no reference to the defendant's record in her findings, and we do not rely on his record to support the order.

[3] During the eight and one-half years the plaintiff had worked for the MBTA, she had never had to seek a harassment prevention order or call the police because of any other passenger's behavior.

defendant "went off" and "verbally assault[ed]" the plaintiff in a rant, saying "out-of-control things." The defendant called her a "fat bitch" and a "ghetto bitch," and he threatened her job. Although she did not fear for her job, she was afraid for her physical safety because he "was irate." The plaintiff had to call the police to have the defendant removed. As a result of her fear of the defendant from his physical assault, the plaintiff began denying him access to the MBTA bus she operated.

On September 9, 2015, after a hiatus of some three years during which the defendant did not ride the plaintiff's bus (either because she was assigned to a different route, or he simply did not attempt to board), the defendant again boarded the plaintiff's bus and became angry at her for attempting to deny him access to the bus. Although he made no direct threat of physical violence, the defendant told the plaintiff to call the police in order to remove him from the bus, which she did. The police removed him from the bus, but not before he went on a rant about the impropriety of his being denied access to her bus route and telling her that he would be there every day to inconvenience her as she had done to him. The dissent describes this incident as "political speech," i.e., a protest against the authority of the MBTA. See post at . We disagree. When the defendant told the plaintiff that the police would have to remove him, his speech became a physical threat, implying as it

did that physical force would be required for him to leave the bus. At that point, it is fair to conclude that his intent was to frighten and intimidate her, and she was, in fact, frightened.

The defendant testified that he is a disabled veteran who suffers from posttraumatic stress disorder, and relies on the plaintiff's bus route to get to and from the Veteran's Administration hospital (V.A.), where he both works and receives services. As a result of being denied access to her bus, the defendant had difficulty getting to the V.A. He denied any romantic interest in the plaintiff, and denied making any threats or physically assaulting her.[4]

The judge expressly found the defendant's testimony not credible. She found that he was angry and upset that he could not ride his chosen bus route. The judge determined his actions toward the plaintiff were wilful, and caused her to be in fear and to suffer intimidation. The judge further observed that the defendant was "visibly angry and upset during the course of th[e] harassment order hearing."

At the conclusion of the hearing, the judge extended the harassment prevention order to October 7, 2016, ordering the

---

[4] The defendant also filed a claim with the Massachusetts Commission Against Discrimination against the MBTA and the plaintiff, which claimed discrimination based on race and disability. That action ended with a finding of lack of probable cause.

defendant not to abuse or contact the plaintiff, and to stay away from both her home and work. This included the MBTA bus operated by the plaintiff. The defendant timely noticed an appeal.

2. <u>Discussion</u>. "In reviewing a civil harassment order under G. L. c. 258E, we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant committed '[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property.' G. L. c. 258E, § 1, 'Harassment,' inserted by St. 2010, § 23. See <u>O'Brien</u> v. <u>Borowski</u>, 461 Mass. 415, 419-420 (2012)." <u>A.T.</u> v. <u>C.R.</u>, 88 Mass. App. Ct. 532, 535 (2015). It is the plaintiff's burden to prove that each of the three qualifying acts was maliciously intended, defined by G. L. c. 258E, § 1, as being "characterized by cruelty, hostility or revenge," and, as pertinent here, that each act was intended by the defendant to intimidate the plaintiff or place the plaintiff in "fear of physical harm or fear of physical damage to property." <u>O'Brien</u> v. <u>Borowski</u>, <u>supra</u> at 426, 427.

"In the context of a civil [harassment prevention] order, the test is a subjective one; if all of the other elements are

present, it is sufficient to show that the harassment actually caused fear, intimidation, or abuse to the plaintiff, even if a reasonable person in the plaintiff's situation would not have been so affected."  Petriello v. Indresano, 87 Mass. App. Ct. 438, 444-445 (2015).  In the determination of whether the three acts "did 'in fact cause fear, intimidation, abuse or damage to property,'" it is "the entire course of harassment, rather than each individual act, that must cause fear or intimidation."  O'Brien v. Borowski, supra at 426 n.8.  A.T. v. C.R., supra.

Here, although the judge did not delineate three acts of harassment, she did find that the plaintiff continued to suffer harassment from the defendant "well in excess of three (3) times over the past several years."  This finding is amply supported by the record.  The first act occurred on June 10, 2012, when the defendant grabbed her from behind in a bear hug across her chest, as if he intended to "abduct" her.  She had to pry his arms off to get free.

The second act occurred on July 1, 2012, when the defendant boarded the plaintiff's bus and attempted to apologize for having grabbed her on June 10, 2012.  When the plaintiff refused his apology and requested that he not speak to her, the defendant called her a "fat bitch" and a "ghetto bitch," and he threatened her job.  Although she was not concerned for her job, she was afraid for her physical safety because he "was irate."

In fact, the plaintiff had to call the police to have the defendant removed.

The third act occurred on September 9, 2015, when the defendant again boarded the plaintiff's bus, and became angry at her for attempting to deny him access to the bus. Although he did not directly threaten the plaintiff with physical violence, he did tell her that she would need the police to have him removed from the bus. When the police did remove the defendant from the bus, he began ranting about being denied access to her bus route and told the plaintiff that he would be there every day to inconvenience her as she had done to him.

The defendant claims that the judge's failure to delineate three distinct acts was error and that, in any event, the three incidents we describe above are not sufficient for purposes of G. L. c. 258E. We disagree. In the first incident, the defendant physically assaulted the plaintiff in a manner that she described as an attempted abduction. She had to pry his arms off of her to get free. Thus, his hostile behavior not only placed the plaintiff in fear of physical harm, but also actually caused her physical harm. See O'Brien v. Borowski, supra at 427.

The second act is similarly supportive of the judge's ultimate finding. Although the defendant claimed he was attempting to apologize for having assaulted her a few weeks

prior, his claimed atonement devolved into threats and venomous name calling. See A.T. v. C.R., 88 Mass. App. Ct. at 535 (the defendant's calling the plaintiff a "bitch" was "indicative of a cumulative pattern of harassment"). Based on the defendant's "irate" behavior, and the necessity of police intervention to remove the defendant, the plaintiff expressed explicit fear for her physical safety.

The third act presents the most questions. On this occasion, the defendant boarded the bus and angrily confronted the plaintiff for attempting to deny him access to the bus. Although he did not directly threaten the plaintiff with physical violence, he nonetheless threatened that he would continue confronting her in this same manner, i.e., ranting about being denied access, and that she would need continuous police intervention to remove him from the bus. It was his stated goal that on a daily basis he would inconvenience her as she had him. This suffices to demonstrate the defendant's malicious intent, characterized by cruelty, hostility, or revenge, to intimidate the plaintiff and to place her in fear of physical harm. See O'Brien v. Borowski, supra at 426-427. See also A.T. v. C.R., supra at 536 ("The threat to make the plaintiff's life a living hell clearly was intimidation"). Indeed, as in A.T. v. C.R., the defendant's stated goal of a daily confrontation on the bus that would require the police to

remove him fell within the definition of "true threat" described in O'Brien v. Borowski, supra at 424.[5]  See Petriello v. Indresano, 87 Mass. App. Ct. at 446.  In fact, in O'Brien v. Borowski, supra at 425, the Supreme Judicial court explained that the "'true threat' doctrine applies not only to direct threats of imminent physical harm, but to words or actions that -- taking into account the context in which they arise -- cause the victim to fear such harm now or in the future and evince intent on the part of the speaker or actor to cause such fear."

Furthermore, not only did the defendant expressly state his intent to exact revenge for what had been done to him, but it is also important that this incident not be viewed in isolation. Rather, we must look to the defendant's entire course of conduct to determine whether the evidence supports the judge's finding that the defendant caused the plaintiff fear or intimidation.

---

[5] As described in O'Brien, "A true threat does not require 'an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response.'"  O'Brien v. Borowski, supra at 424, quoting from Commonwealth v. Chou, 433 Mass. 229, 234 (2001). See United States v. Fulmer, 108 F.3d 1486, 1492 (1st Cir. 1997) ("The use of ambiguous language does not preclude a statement from being a threat").  See also United States v. Malik, 16 F.3d 45, 49 (2d Cir.), cert. denied, 513 U.S. 968 (1994) ("An absence of explicitly threatening language does not preclude the finding of a threat").  "Nor need a true threat threaten imminent harm; sexually explicit or aggressive language 'directed at and received by an identified victim may be threatening, notwithstanding the lack of evidence that the threat will be immediately followed by actual violence or the use of physical force.'"  O'Brien v. Borowski, supra at 424, quoting from Commonwealth v. Chou, supra at 235.

Viewing the third act in conjunction with the evidence of the second act, where the defendant, during an angry and hostile confrontation on the bus, called the plaintiff a "fat bitch" and a "ghetto bitch," which required police intervention to remove the defendant and caused the plaintiff to express explicit fear for her physical safety, the judge was warranted in her implicit conclusion that the third act also caused the plaintiff to subjectively fear for her physical safety.  See Seney v. Morhy, 467 Mass. 58, 63 (2014), quoting from O'Brien v. Borowski, supra at 426 n.8 ("The target of the harassment must have experienced an 'entire course of harassment,' the whole of which caused fear or intimidation").  Given the overlapping nature of the defendant's conduct in the second and third act, as well as the entire course of conduct, and not viewing each act in isolation as the dissent does, it was reasonable for the judge to infer the existence of the plaintiff's fear of physical violence as well as the defendant's malicious intent.  Contrast Gassman v. Reason, 90 Mass. App. Ct. 1, 9 (2016) ("[T]here simply is no evidence that [the defendant] intended to cause any harm at all to [the plaintiff], much less that she wilfully committed three or more acts, aimed at [the plaintiff], each with the intent to cause fear, intimidation, abuse, or damage to property . . . [, and] . . . no evidence of a true threat").

In the end, the judge had an opportunity at the hearing to observe both the plaintiff and the defendant, including their demeanor. The judge particularly noted that she found the plaintiff's testimony to be credible, but not the defendant's. More importantly, she found not only that the defendant was "angry" that he could not ride the bus of his choosing, but also that his anger spilled over into the court room itself where, the judge noted, he "was visibly angry and upset during the course of [the] harassment order hearing." Finally, it is important to note that this order of protection is civil in nature, not penal. This case is not about punishing the defendant for his behavior and actions,[6] but rather, it is about providing a limited measure of protection for the plaintiff, who the judge found to be genuinely in fear for her physical safety. See A.T. v. C.R., 88 Mass. App. Ct. at 540 ("This is a civil case, interpreting a statute, G. L. c. 258E, whose purpose is protective, not penal"). Given all that has occurred, the judge properly determined that the plaintiff carried her burden to demonstrate by a preponderance of the evidence that she was entitled to an order of protection under G. L. c. 258E.

> October 9, 2015, extension order affirmed.

---

[6] Contrary to the dissent's concern regarding acts of civil disobedience, post at note 10, the defendant made no such claim at the hearing, and if he had, it likely would have been discredited as the judge did with the entirety of his testimony.

MILKEY, J. (dissenting).  The defendant, N.J. (defendant),
a Gulf War veteran who suffers from posttraumatic stress
disorder, lives in Randolph.  He depends on public
transportation to take him to the Veterans Affairs hospital in
the Jamaica Plain section of Boston, where he both receives
services and is employed.  The plaintiff, V.J. (plaintiff), is
the driver of the Massachusetts Bay Transportation Authority
(MBTA) bus that fits the defendant's work schedule.  The
plaintiff decided to ban the defendant from using her bus.
Then, based in material part on the ire the defendant expressed
for not being allowed to use the bus on which he depends for
employment and treatment, the plaintiff obtained a harassment
prevention order that served to implement her ban.  Because I
believe that the evidence was insufficient as a matter of law to
support such an order, I respectfully dissent.

Background.[1]  According to the plaintiff, the defendant, a
regular bus rider on her route, tried to "court" her for several
months.  For example, he tried to give her his phone number.
The plaintiff rebuffed such advances, and -- in response to a
question by the judge as to whether she reported the defendant's
behavior to her supervisors -- she testified, "I didn't pay any
attention to it, 'cause he's not the only gentleman that's ever

---

[1] The factual recitations that follow are drawn from the
judge's findings, supplemented by the plaintiff's testimony,
which the judge expressly credited.

boarded my bus . . . who's, you know . . . tried to . . . take me out or whatever."[2]  The plaintiff's attitude toward the defendant understandably changed when, on June 10, 2012, while she was making a purchase at a store at an MBTA station during a break, the defendant gave her an unsolicited "bear hug" from behind.

On July 1, 2012, the defendant came to the front of the plaintiff's bus to apologize for the earlier incident.  The plaintiff refused to accept this apology and told the defendant to stop speaking to her.  At that point, the defendant "began to verbally assault" the plaintiff, referring to her, for example, as a "ghetto bitch."  According to the plaintiff's testimony, the defendant threatened her job, but he did not threaten physical harm or "make any threatening gestures."  She nevertheless was afraid for her physical safety because he was "irate."  She also testified that based on the defendant's "go[ing] on these rants and say[ing] these out-of-control things that are just untrue," she did not consider him to be "of sound mind."  The July 1, 2012, incident ended with the plaintiff having the police remove the defendant from the bus.

---

[2] The judge found that the defendant's advances caused the plaintiff to "feel uncomfortable," a statement that the majority repeats.  See ante at  .  Although one can imagine that this could have been the case, there was not actually any testimony to that effect.  To the contrary, the plaintiff's own comments indicate that she was little bothered by the defendant's trying to "court" her.

According to the testimony adduced at the evidentiary hearing, the next three years passed without incident. The plaintiff occasionally would spot the defendant at the bus stop, but she testified that "[h]e didn't even attempt to get on once he saw who was behind the wheel." During these passing encounters, the defendant did not make any sort of threat to the plaintiff. Although the record is less than clear about the details, it reflects that both parties understood that the plaintiff effectively had banned the defendant from riding her bus,[3] and that, representing himself, the defendant brought two unsuccessful cases against the MBTA seeking to challenge that practice (one in the Massachusetts Commission Against Discrimination and one in Superior Court). The record also reflects that the plaintiff was for a time assigned to a different bus route, obviating the need for any interactions between the two. However, she eventually was returned to the original route.

On September 9, 2015 -- that is, after a thirty-eight month hiatus -- the defendant decided to board the bus even though the plaintiff was driving it. As the plaintiff herself acknowledged, he did not make any threats to her at this time. When she challenged his boarding the bus, he told her to call

---

[3] The plaintiff herself referred to "three years of me denying him access to my bus."

the police.  She did so, and the police removed him -- in the plaintiff's words -- "because I wanted him removed."  The plaintiff's testimony also referenced an undated subsequent incident in which the defendant stood outside the bus doors and "kept going on and on and on" until the police arrived.

On September 25, 2015, the plaintiff filed a complaint for protection from harassment pursuant to G. L. c. 258E, § 3, along with an affidavit summarizing three alleged incidents of harassment.  These were the June 10, 2012, "bear hug" incident; the July 1, 2012, incident in which the defendant tried to apologize and then became irate; and the September 9, 2015, incident in which the plaintiff had the police remove him from the bus.[4]  When the judge asked her to explain what caused her to seek the order, the plaintiff testified:

> "He's just so aggressive.  If he could just, could have come to me like a normal person would, without the temperament, I, I, perhaps I might have, but he's just so aggressive with the 'Call the police' and it's just -- it's crazy.  It's just kind of crazy."

She then stated that she was in fear of physical harm from the defendant and that such fear was "based on the things I know

---

[4] In her affidavit submitted with that application, but not in her testimony, the plaintiff stated that before the police removed the defendant, he went "on a rant about how I can't continue to do this and that he would be there every day to inconvenience me like I have him."

that are in his criminal record."[5]  No evidence was admitted as to the defendant's criminal record, if any.[6]

Discussion.  A harassment protection "order can be sought by anyone 'suffering from harassment.'"  F.A.P. v. J.E.S., 87 Mass. App. Ct. 595, 598 (2015), quoting from G. L. c. 258E, § 3. "To establish harassment, a complainant must prove that the defendant, motivated by cruelty, hostility, or revenge, wilfully committed three or more acts aimed at a specific person, each with the intent to cause that person to experience fear or intimidation, or to cause abuse or damage to property, which, considered together, did in fact cause fear, intimidation, abuse, or damage to property."  O'Brien v. Borowski, 461 Mass. 415, 426 (2012).[7]

---

[5] At an earlier point in the evidentiary hearing, the plaintiff mentioned the bear hug without offering that she was frightened by it.  The judge then sought to elicit from her that it was the bear hug that placed her in fear.  The plaintiff responded:  "That, and based on his record with the MBTA Transit Police, yes, I am very fearful."

[6] The majority accurately points out that in harassment actions, judges are directed to review a defendant's criminal record.  See ante at note 3.  However, nothing before us indicates that the judge did so here, or what that record, if any, showed.  Therefore, we cannot rely on the defendant's criminal record (if any) in determining whether the evidence was sufficient to support the issuance of the harassment order.

[7] Under the statute, there is a "second definition of 'harassment' [that] applies to situations where . . . a defendant allegedly committed one or more acts of sexual misconduct."  F.A.P. v. J.E.S., 87 Mass. App. Ct. at 599, citing G. L. c. 258E, § 1 (definition of "Harassment," subsection

The harassment statute does not apply to speech protected by the First Amendment to the United States Constitution. Id. at 421-428. This means that speech cannot qualify as "harassment" unless it is exempted from protection under the First Amendment because it rises to the level of "fighting words" or "true threats." Ibid. "Fighting words" are "limited to words that are likely to provoke a fight:  face-to-face personal insults that are so personally abusive that they are plainly likely to provoke a violent reaction and cause a breach of the peace." Id. at 423, citing Cohen v. California, 403 U.S. 15, 20 (1971). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003).

For purposes of my analysis, I assume arguendo that the judge reasonably could have found that the June, 2012, bear hug incident and the July, 2012, failed apology incident each qualified as an act of harassment under the statute.[8]  That

---

[ii]).  Had the plaintiff demonstrated that the bear hug amounted to an indecent assault and battery, she could have sought a harassment prevention order on that basis alone.  The plaintiff did not press the case on this basis, nor did the judge consider this alternative theory.

[8] In fact, it is not clear that the June and July incidents qualify as acts of harassment.  For example, although the judge

leaves the question whether the third incident on which the plaintiff relies, the September 9, 2015, incident, also so qualifies.[9] Neither the judge's findings nor the testimony indicates what the defendant actually said during the incident other than to insist that the plaintiff call the police. Nothing suggests that the defendant said anything at the time that comes close to "fighting words" or "true threats." Contrast Commonwealth v. Bigelow, 475 Mass. 554, 567-570 (2016) (fact finder reasonably could find that certain unsettling letters anonymously sent to wife of public official at her home rose to the level of "true threats").

The majority discerns a threat of violence in the defendant's insistence that the plaintiff contact the police, stating that "[w]hen the defendant told the plaintiff that the police would have to remove him, his speech became a physical threat, implying as it did that physical force would be required

expressly rejected the defendant's portrayal of the ill-conceived bear hug as an effort to "comfort" the plaintiff (as he would do with someone at his church), it does not follow that the bear hug therefore was motivated by "cruelty, hostility, or revenge" (as opposed to, say, a misplaced attempt at familiarity). The judge found only that the defendant's actions were "willful"; she made no finding as to the defendant's intent.

[9] As noted, there was evidence of a fourth incident in the weeks prior to the evidentiary hearing in which the defendant voiced his right to board the bus but was taken away by police before he boarded it. This conduct fails to qualify as an act of harassment for the same reasons, discussed below, that the more intrusive conduct of September 9, 2015, fails to qualify.

for him to leave the bus." <u>Ante</u> at     .  Assuming arguendo that the defendant's statement to "call the police" can be taken as a suggestion that the police might have to use force to remove him from the public bus, this cannot reasonably be taken as an implied threat of violence against the plaintiff.[10]  Moreover, the majority draws this inference even though the plaintiff herself expressly disclaimed that the defendant made any threat to her during the September 9, 2015, incident.  Specifically, when the judge asked her directly, "[D]id he make a threat to you at that time?" the plaintiff replied, "He did not."[11]

The majority also relies on the plaintiff's statement in her affidavit that the defendant had said that "he would be there every day to inconvenience me like I have him."  That statement does not supply the necessary element of threatened violence either.  Indeed, according to the plaintiff's own words, what the defendant was threatening was inconvenience comparable to that which she had caused him (further undercutting any suggestion that he had threatened physical harm).

---

[10] Drawing such an inference also has disturbing ramifications for civil society (treating, as it does, a venerable form of peaceful protest as threatened violence).

[11] A moment later the judge asked, "[H]e again didn't make any -- say anything to you that was a direct threat to your physical well-being, did he?"  Again, the plaintiff said, "No."

Furthermore, as a matter of law, a stated intent to cause mere inconvenience cannot rise to the level of "a serious expression of an intent to commit an act of unlawful violence to a particular individual." Virginia v. Black, 538 U.S. at 359 (defining the "true threat" category of unprotected speech). See O'Brien v. Borowski, 461 Mass. at 427 (plaintiff in a harassment case must prove that defendant intended to cause "fear of physical harm or fear of physical damage to property"). By recognizing threatened inconvenience as a true threat, lying outside the protection of the First Amendment, we are diluting what is properly a narrow and carefully defined class of unprotected speech.

In fact, far from lying at the periphery of free speech, the defendant's words can be understood as decrying perceived abuses by a public official and hence as a form of "political speech" situated at the core of the First Amendment's protection. See Van Liew v. Stansfield, 474 Mass. 31, 38 (2016), citing McIntyre v. Ohio Elections Commn., 514 U.S. 334, 346 (1995) (public accusations that local planning board member "was 'corrupt and a liar'" could not qualify as "incidents of harassment" where they "constituted political speech and were at the core of the speech that the First Amendment . . . protects"). As the Supreme Court has emphasized, "Speech is often provocative and challenging," and it does not lose its

First Amendment protection simply because it may cause "public inconvenience, annoyance, or unrest." Houston v. Hill, 482 U.S. 451, 461 (1987) (quotation omitted). See id. at 457-458 (aggressive verbal challenges to police officers held to be protected speech).

Of course, the defendant's conduct during the September 9, 2015, incident also included nonverbal actions. Those actions consisted of the defendant's boarding the bus against the plaintiff's wishes and refusing to leave until the police came. In light of the plaintiff's refusal to operate the bus with him on it, this had the effect of disrupting the bus trip. Again, however, any desire on the part of the defendant to cause the plaintiff or others inconvenience does not qualify as harassment. See O'Brien v. Borowski, 461 Mass. at 427.

To be sure, the judge disbelieved the defendant's claim to be a calm individual, and she found that he "is clearly angry and upset that he cannot ride the bus he chooses to work." However, she did not find, nor did the plaintiff even argue, that the defendant's conduct on September 9, 2015, was motivated by anything other than his desire to be allowed once again to ride the public bus.[12] In this context, however loud or

---

[12] The judge found that the defendant's conduct was wilful and that it caused the plaintiff to be fearful, but she made no findings that the defendant's conduct was "malicious" or that he intended to place the plaintiff in fear for her physical safety.

insistent his protests may have been,[13] the defendant's conduct cannot reasonably be said to have been motivated by "cruelty, hostility, or revenge." As a matter of law, the September 9, 2015, incident simply does not qualify as an act of harassment, and the plaintiff therefore has not shown the three acts necessary for obtaining a harassment prevention order.[14]

None of this is to say that in her role as an MBTA official entrusted to keep the public safe, the plaintiff lacked the authority to exclude the defendant from her bus. Whether she possessed, and properly exercised, such authority is not before us, and I express no view on it. The question instead is whether, under the circumstances of this case, a harassment prevention order pursuant to G. L. c. 258E provided a proper vehicle for the plaintiff to accomplish that end. Because, in my view, it plainly did not, I respectfully dissent.

---

[13] In point of fact, the record includes virtually nothing about the tone and volume that the defendant used during the September 9, 2015, incident.

[14] The majority correctly points out that, in assessing whether conduct in fact caused fear or intimidation, we should not view incidents in isolation. See ante at    . Instead, "It is 'the entire course of harassment, rather than each individual act, that must cause fear or intimidation.'" A.T. v. C.R., 88 Mass. App. Ct. 532, 541 (2015) (Blake, J., dissenting), quoting from O'Brien v. Borowski, supra at 426 n.8. But the fact that, more than three years earlier, the defendant had given the plaintiff an unwanted bear hug in public and called her terrible names after his attempt to apologize failed, does nothing to alter the essential nature of the September 9, 2015, incident as one in which the defendant merely was insisting that he had a right to ride the bus.