The defendant, C.F.-M., appeals from the issuance of a harassment prevention order issued pursuant to G. L. c. 258E. She contends that her neighbor, R.G.,[2] did not prove three or more acts of harassment as defined by G. L. c. 258E, § 1, inserted by St. 2010, c. 23. In addition, she asserts that she was denied procedural due process in connection with the issuance of the order. We affirm.
Discussion. 1. The order. The standard for issuance of a G. L. c. 258E harassment prevention order is "whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant had committed [three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse, or damage to property." Gassman v. Reason, 90 Mass. App. Ct. 1, 7 (2016), quoting from G. L. c. 258E, § 1. "The plaintiff bears the burden of proving that each of the three qualifying acts was maliciously intended, defined by G. L. c. 258E, § 1, as being characterized by cruelty, hostility or revenge, and that each act was intended by the defendant to place the plaintiff in fear of physical harm or fear of physical damage to property." A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015) (quotations and citations omitted). See O'Brien v. Borowski, 461 Mass. 415, 420 (2012) ; Seney v. Morhy, 467 Mass. 58, 60 (2014) ; Van Liew v. Stansfield, 474 Mass. 31, 36-38 (2016) ; V.J. v. N.J., 91 Mass. App. Ct. 22, 25 (2017).
We recite the facts as the judge would have been permitted to find them, and which his order indicates he credited. R.G. and C.F.-M. were neighbors who had a tumultuous relationship. R.G. told C.F.-M. to stay away from her children.[3] On or about June 18, 2016, C.F.-M. asked R.G.'s four year old son to come to her house with the promise of colored markers. R.G. became concerned when she could not find her son. She enlisted the other members of the household in a search. R.G. "scream[ed]" and "yell[ed]" for her son, but he did not answer. C.F.-M. and the boy were hiding behind a bush on C.F.-M.'s property. C.F.-M. did not respond, and told the boy to be quiet because they were playing hide and seek.
A month later, on or about July 16, 2016, C.F.-M. went to R.G.'s house uninvited and stated to R.G. that if R.G. did not make peace with her then she would "take measures." R.G. told C.F.-M. to leave her family alone and stay away. Finally, at a time and date unspecified, C.F.-M. came to R.G.'s home "in the middle of the night" and pounded on the door, "screaming [R.G.'s] name" and asking R.G. to come outside.[4] R.G. sought a harassment prevention order on the basis that C.F.-M. had intimidated her and placed her in fear.[5]
In reviewing the three acts, we are mindful that fear is judged by a subjective standard. Gassman v. Reason, supra at 8 ("[T]he question is only whether [the plaintiff] in fact was placed in fear, not whether the fear was reasonable"). Furthermore, we look at the acts in the aggregate. "In the determination whether the three acts 'did in fact cause fear, intimidation, abuse or damage to property,' it is 'the entire course of harassment, rather than each individual act, that must cause fear or intimidation.' " A.T. v. C.R., 88 Mass. App. Ct. at 535, quoting from O'Brien v. Borowski, 461 Mass. at 426 n.8.
The act of hiding with R.G.'s younger child, while R.G. was searching for him, is clearly an act which a judge could find was malicious, designed to cause fear, and which did place R.G. in fear. The judge was also aware of R.G.'s repeated requests that C.F.-M. leave R.G. and her children alone. The judge could also find that C.F.-M.'s statement that she would "take measures" to be a threat. Although the act of banging on the door in the middle of the night is more ambiguous, it must be viewed in context. A.T. v. C.R., supra at 535. The judge could permissibly find that the act of hiding the child, combined with C.F.-M.'s statement that she would "take measures" if R.G. did not make peace with her, and C.F.-M.'s loud and disruptive visit to the home in the middle of the night, were all intended and designed to intimidate R.G. and cause her fear. The judge could also find that R.G. found C.F.-M.'s conduct and statements to be threatening. These findings were based on the resolution of what was essentially a battle of credibility. We will not second guess the judge's credibility determination as to C.F.-M.'s intent and R.G.'s level of fear. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 540. See also Adoption of Larry, 434 Mass. 456, 462 (2001) (deferring to judge's assessment of witness credibility).
2. Procedural due process. Three separate proceedings involving C.F.-M. were heard on the same day. C.F.-M. had first filed a request for an abuse prevention order against another individual, who lived with R.G., but who also had had a sexual relationship with C.F.-M. At that hearing, there was testimony regarding that sexual relationship; R.G. was present in the court room. R.G. then filed the instant request for a harassment prevention order against C.F.-M. A hearing was held later that afternoon, and the judge issued a six-month order. Once the judge issued his ruling, C.F.-M. asked for a reciprocal order against R.G., which was denied.
C.F.-M. maintains that she was denied procedural due process because she was denied the opportunity to appear with counsel and present evidence. For the first time on appeal, she also contends that she was denied procedural due process because she was not served with R.G.'s complaint and did not have an opportunity to read R.G.'s complaint and affidavit before the hearing.
In contested proceedings, each party must be given a meaningful opportunity to challenge the other party's evidence. See F.A.P. v. J.E.S., 87 Mass. App. Ct. 595, 601 (2015) ;[6] Guidelines for Judicial Practice: Abuse Prevention Proceedings, § 1:02 (2011) (Guidelines). "Whether a defendant's constitutional rights have been violated [in a G. L. c. 258E proceeding] will depend on the fairness of a particular proceeding." Frizado v. Frizado, 420 Mass. 592, 598 (1995).
Here, the hearing took place on the same day that R.G. filed the application for a G. L. c. 258E order. C.F.-M. was nonetheless given a meaningful and fair opportunity to present her case. See Frizado, supra at 597. Both parties appeared at the hearing pro se. After R.G. testified, C.F.-M. was given an uninterrupted opportunity to testify. She did so, disputing the allegations. At the end of the proceeding, following the judge's announcement that he would grant the order, C.F.-M. asked, "Does it-does it matter that I wasn't provided any notice or any opportunity to bring any evidence or put any thought or have counsel here?" The judge responded, "You can certainly explore your rights in terms of what-how you want to proceed." C.F.-M. did not file any subsequent motions, nor did she ask for a further hearing.[7]
In dealing with this complicated set of relationships, it was well within the judge's discretion to hold the hearing on the same day as the application was filed. See Singh v. Capuano, 468 Mass. 328, 331 (2014) ("The decision to continue or suspend a hearing ... must be made in light of the judicial responsibility to hear and decide cases in a manner that is consistent with the purposes of the statute and the interests of justice"). While this may have impeded the ability to call third-party witnesses that day, the judge afforded C.F.-M. the opportunity to return to do so. C.F.-M. was not prejudiced.
C.F.-M. did not cross-examine R.G., and now claims error in the failure of the judge to tell her that she was permitted to do so. A judge has considerable discretion in conducting hearings of this type, including limitations on cross-examination. See Frizado, supra at 597 ("[C]ertainly a judge may limit cross-examination for good cause in an exercise of discretion"). C.F.-M. heard R.G.'s testimony and rebutted it point by point. She had just concluded her own hearing in which she sought an abuse prevention order. During that hearing C.F.-M., herself an attorney, had been cross-examined, and was thus aware that cross-examination was permitted. Under these circumstances, there was no abuse of discretion.
Finally, C.F.-M. contends on appeal that she was not provided a copy of the complaint and affidavit before or during the hearing.[8] We note that there is no right to service of the affidavit in advance of a hearing with notice. Cf. Flynn v. Warner, 421 Mass. 1002, 1002 (1995) ("There is no statutory or constitutional requirement that a G. L. c. 209A complainant's affidavit be served with the order"). At a hearing with notice, "[f]airness requires ... that the defendant ... know what has been alleged," a requirement satisfied here by the testimony of the plaintiff. Guidelines § 5.01 commentary (2011). In addition, "[a] defendant or his counsel should be given adequate opportunity to consider any affidavit filed in the proceeding on which the judge intends to rely before being required to elect whether to cross-examine the complainant or any other witness." Frizado, supra.
C.F.-M.'s belated protest did not place the judge on notice that she claimed not to have the affidavit, as opposed to a general protest about being heard on short notice. As a consequence, the record is barren of any evidence that the complaint and affidavit were not provided. Errors that are not disclosed by the record afford no basis for reversal. Buckmore v. Czelusniak Funeral Home, Inc., 427 Mass. 1014, 1014 (1998). See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).
Harassment prevention order affirmed.

We identify the parties by their initials in order to protect the identity of the plaintiff, in accordance with 18 U.S.C. § 2265(d)(3) (2012).

R.G. said she did so repeatedly personally and by electronic mail (e-mail). C.F.-M. admitted to receiving an e-mail, although the time frame is unclear.

C.F.-M. argues on appeal that the second and third examples occurred at the same time, and should be treated as a single incident. They were presented to the judge as separate instances, and the events as described in this record are dissimilar. On this record, we cannot say, as a matter of law, that the incidents were not separate, or that any implicit finding that the incidents were separate was clearly erroneous.

R.G. relied on two other instances of contact with her children, one in which C.F.-M. sent her daughter over with a gift for R.G.'s older son, and another in which C.F.-M. discussed school assignments with R.G.'s older son. We do not address these episodes.

We note that "the Supreme Judicial Court has repeatedly cited case law interpreting c. 209A orders when analyzing analogous issues in the context of c. 258E orders." J.S.H. v. J.S., 91 Mass. App. Ct. 107, 109 (2017). See, e.g., O'Brien v. Borowski, 461 Mass. at 417-418 ; Seney v. Morhy, 467 Mass. at 62 ; Mass. G. Evid. § 1106 note, at 389 (2017) (evidentiary standards applicable in c. 209A proceedings also applicable in c. 258E proceedings).

The harassment prevention order states in part that, "For good cause ... a defendant may request the Court to modify this Order before its scheduled expiration date."

The time stamps on the transcript indicate that C.F.-M.'s previous case ended at 3:35 p.m. and the present case commenced at 4:32 p.m. If correct, the one-hour time difference would rebut C.F.-M.'s contention that she was "asked to step forward immediately after the conclusion" of her prior hearing. However, even if the time stamp is incorrect, as counsel argues, the timing does not establish the she was not actually given the complaint or the affidavit.