NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-1284                                        Appeals Court

ILAN I. & another[1]  vs.  MELODY M.[2]

No. 18-P-1284.

Plymouth.     September 12, 2019. - December 4, 2019.

Present:  Vuono, Meade, & Sullivan, JJ.

Harassment Prevention.  Civil Harassment.  Protective Order.
    Due Process of Law, Right to hearing, Hearing.  Practice,
    Civil, Appeal.

Civil action commenced in the Superior Court Department on June 16, 2016.

A motion to extend a harassment prevention order was heard by Cornelius J. Moriarty, II, J.; and the case was heard by Mark C. Gildea, J.

Margaret A. Ishihara for the defendant.
Jeffrey E. Francis for the plaintiffs.

SULLIVAN, J.  After notice and a hearing, Ilan I. and his husband, Knox K., obtained a harassment prevention order against

---

[1] Knox K.

[2] The parties' names are pseudonyms.

their former friend and then current neighbor, Melody M.  See G. L. c. 258E.  The order was extended on two occasions.  The defendant appeals, contending that her due process rights were violated because the judge did not hold an evidentiary hearing when the first extension order was issued, and that none of the orders were supported by sufficient evidence.  The plaintiffs contend, among other things, that the appeal from the first extension order must be dismissed.  We affirm.

1.  Appealability.  The plaintiffs filed a three-count complaint in June of 2016, seeking relief under G. L. c. 258E, and asserting claims for intentional infliction of emotional distress and trespass.  A judge of the Superior Court issued an ex parte harassment prevention order on June 16, 2016.  Following a hearing after notice on June 21, 2016, a harassment prevention order issued for six months, to expire on January 9, 2017.  Melody M. timely appealed from this order, but failed to perfect her appeal, and it is not before us.  After a nonevidentiary hearing on January 9, 2017, a judge of the Superior Court (first judge) extended the order for six months, to July 10, 2017 (January, 2017 extension order).  Melody M. timely appealed (first appeal).  On September 14, 2017, after an evidentiary hearing, a second judge again extended the order, to July 10, 2018, and ordered the entry of a "Judgment and Order on Complaint for Harassment Prevention Order" for each plaintiff

pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974) (September, 2017 extension orders).  Melody M. timely appealed (second appeal),[3] and we consolidated the two appeals.

The plaintiffs now claim that Melody M.'s appeal from the January, 2017 extension order must be dismissed because it was a premature, interlocutory appeal, and was not preserved by being included in the second appeal.

This case presents a procedural anomaly.  In the usual course, requests for harassment prevention orders are filed as stand-alone proceedings using complaint forms approved by the trial court.  See G. L. c. 258E, §§ 3, 11.  There is an immediate right to appeal to this court from an order after notice, and from any extension order.  See O'Brien v. Borowski, 461 Mass. 415, 418 (2012) (G. L. c. 258E).  Cf. Zullo v. Goguen, 423 Mass. 679, 681 (1996) (G. L. c. 209A).  Certain personal identifying information is impounded and withheld from public inspection.  Filing fees are waived.  See G. L. c. 258E, §§ 3 (c), 10.  Other civil or criminal remedies are preserved.  See G. L. c. 258E, § 3 (g) ("An action commenced under this chapter shall not preclude any other civil or criminal remedies").

---

[3] At the time Melody M. filed her notices of appeal, the two common-law counts of the plaintiffs' complaint were still pending; a stipulation of dismissal without prejudice as to those counts entered roughly one week after Melody M.'s second appeal entered on the docket.

For reasons not apparent in the record, the plaintiffs here did not follow that procedure, and instead filed a civil complaint in three counts of which the request for relief under G. L. c. 258E was but one. The practical effect of the plaintiffs' choice of pleading in this case was to impede the defendant's right of immediate appeal once the June, 2016 order after notice and the January, 2017 extension order had entered.[4] See O'Brien, 461 Mass. at 418.

We now clarify that, consistent with O'Brien, supra, a G. L. c. 258E order is immediately appealable, even where it is joined with other causes of action in a civil complaint. Cf. Zullo, 423 Mass. at 681 ("Abuse prevention order proceedings were intended by the Legislature to be as expeditious and informal as reasonably possible"). For this reason, appeals should be heard quickly and in a uniform manner. Id. at 681-682. "The policies of providing a '[u]niformity of treatment of litigants and the development of a consistent body of law' are equally applicable to" c. 258E appeals regardless whether the request for an order was made in a separate proceeding, or in a civil suit. Id. at 682, quoting Department of Revenue v. Jarvenpaa, 404 Mass. 177, 181 (1989). "We see no reason why the

---

[4] The plaintiffs moved to dismiss the first appeal in this court as interlocutory. That motion was referred to a panel, but after additional motion practice, the appeal was stayed, and ultimately consolidated without objection.

avenue for review of an order made pursuant to G. L. c. [258E] should turn on the fortuity of [how or] where the plaintiff initiated the action." Zullo, supra at 681-682. See O'Brien, 461 Mass. at 418.

Both notices of appeal in this case were properly filed, and the appeals have been consolidated and are properly before us.

2. Due process. The defendant asserts that the first judge erred as a matter of law by entering the first extension order in January of 2017 without an evidentiary hearing. The defendant, newly represented by counsel, requested an evidentiary hearing, and explained to the judge that no formal evidentiary hearing was held at the time the June, 2016 order after notice was entered.[5] Melody M. was entitled to an evidentiary hearing upon request at the January, 2017 extension hearing; it was error for the judge to issue the extension order without permitting the defendant to cross-examine witnesses. See Frizado v. Frizado, 420 Mass. 592, 597 (1995). Cf. Guidelines for Judicial Practice: Abuse Prevention Proceedings § 5:01 (2011). However, a full evidentiary hearing was held at the time of the second extension request in September, and that

---

[5] Melody M. appeared pro se at the time of the June, 2016 order after notice, and the hearing was held based on representations, without objection.

appeal is also before us. We therefore turn our attention to the issues raised with respect to the September, 2017 extension orders, and the sufficiency of the evidence.

3. September, 2017 extension orders. a. Background. We summarize the facts as found by the second judge, supplemented by the record evidence that supports those findings.

The source of the dispute between the parties derives from the breakdown of a friendship in 2012, and disagreement over landscaping projects undertaken by the plaintiffs on their property beginning in 2011, and continuing until 2016. The judge found that Melody M. had engaged in a continuous and escalating course of conduct which, while not initially violative of G. L. c. 258E, ultimately rose to the level warranting issuance of an order.

The conflict between the neighbors began when the defendant went onto the plaintiffs' property and scared Ilan I. while he was napping near the pool in September, 2011. He asked her not to come on the property without permission again. She agreed to e-mail him in advance of entering the property. Although the plaintiffs had previously been friends with Melody M. and her husband, visited one another's homes, shared celebrations, and exchanged cards, Ilan I. and Knox K. told Melody M. and her husband that they no longer wanted to be friends in July of 2012. At some point thereafter, the plaintiffs erected a fence

between the two houses, in part to keep Melody M. out and in part to keep her dog out. Thereafter, on one occasion, Melody M. climbed the fence and tried to talk to Ilan I., who asked to be let alone.

On January 22, 2015, after being informed by local police that her dog was loose, Melody M. returned home to find the dog in her house. After asking other neighbors whether they had seen her dog outside, the defendant went to the plaintiffs' cottage and spent ten minutes knocking on the door. Ilan I. was frightened and did not respond. The plaintiffs then wrote Melody M. and her husband, reminding them that they had asked that "you not come onto our property (which includes not climbing on our fence), and to generally leave us alone. . . . Should you choose to do that again, we will contact the [town] [p]olice and ask that you be removed for trespassing." Melody M. continued to come to the property line to engage Ilan I. in conversation.[6] On April 14, 2015, the plaintiffs wrote Melody M.'s husband to reiterate that they wanted Melody M. to leave them alone. Melody M. saw the letter.

Two months later, on June 26, 2015, the plaintiffs found Melody M. on the doorstep of their cottage. Knox K. escorted her off the property. In a brief conversation, Melody M. said

---

[6] Ilan I. also complained that Melody M. stood near him in a manner that bothered him while at their tennis club.

that she wanted to be informed of landscaping work being done near her property and asked why they were no longer friends.

That day the plaintiffs obtained a "no trespass" form letter from the local police department and sent it to Melody M. On one occasion thereafter, Melody M. drove by Ilan I. and mockingly said, "[H]i [Ilan I.], ha." A few weeks later she drove up behind him as he got out of his car at the mailbox at the end of his driveway, and again said, "[H]i [Ilan I.], ha."

On May 23, 2016, Melody M. twice confronted Ilan I. about trees that he and Knox K. were planting near the parties' property line. The first time, Ilan I. saw Melody M. on a neighbor's property looking through the trees; Melody M. asked Ilan I. questions about what work he and Knox K. were doing. She insisted she should be told of any work within thirty feet of her property line. Ilan I. asked Melody M. to "please leave us alone." Later that day, Melody M. went to another neighbor's yard, and asked Ilan I. whether the landscaping would allow water to come on her property. Again, Ilan I. asked Melody M. to "please leave us alone." Melody M. responded that, "if there is a bunch of water that gets dumped down there, it would be my intention to build a sump and a high-power jet and fire the

water back onto your property.  I think it would be fun.  Alright, I just want you to know that's my intention."[7]

Two days later, on May 25, 2016, Melody M. climbed the fence between the parties' property, leaned over, and demanded to know what work the plaintiffs and their contractors were doing near the property line.  Ilan I. asked Melody M. to get off the fence.  A contractor who was present said that Melody M. was yelling and Ilan I. was visibly shaken.  Later the same day, Melody M. drove her car onto the plaintiffs' property, drove up to their hedge, and looked through the hedge.

The plaintiffs' attorney sent a letter to Melody M. by overnight mail that day requesting (again) that she cease any further contact with Ilan I. and Knox K., and notifying her that they would seek a harassment prevention order if she did not stop.  Melody M. received the letter on May 26, 2016.  The next day, May 27, Melody M. replied by e-mail to the plaintiffs' attorney referring to the two men as "boys."  Two days later, on May 29, 2016, Melody M. stopped her car, blocking the front of the plaintiffs' driveway, and yelled, "Hey boys, did you get my letter, did you get my e-mail, hey boys, did you get my e-mail, okay boys I am going to take it that you did."  Both men were

---

[7] This and other interactions were recorded by Ilan I. on his cell phone.

frightened by this interchange, and considered Melody M.'s use of the word "boys" a homophobic taunt.[8]

The judge found that none of Melody M.'s conduct before the June, 2015 no trespass letter constituted an act of willful or malicious conduct within the meaning of G. L. c. 258E.  The judge found that Melody M.'s conduct after receipt of the no trespass letter was willful and malicious, was intended to cause fear or intimidation, and did in fact cause fear and intimidation.  The September, 2017 extension orders then issued.

b.  Discussion.  "[W]e consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant committed '[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear,

---

[8] Ilan I. testified that he was afraid because Melody M.'s behavior was escalating, and there was no indication that she would stop.  Knox K. testified that Ilan I. had gained weight, was hypervigilant, and frequently woke up in the middle of the night.  After attending Melody M.'s deposition Knox K. felt that "she considers it some kind of a game, and as I said to [Ilan I.], I said I feel a picture of a mouse being played with by a cat with their paws; this is not a serious effort in her mind. And then the more we thought about it, . . . it was as if, okay, she's not taking our requests seriously, she's not taking the court orders seriously, she's not taking this legal process seriously; what is she going to do when this court restraining order expires?  And that fear of her actions and what she might do to [Ilan I.] and me personally, as to our personal safety or to our property kept us up . . . ."

intimidation, abuse or damage to property.'" A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015), quoting G. L. c. 258E, § 1. The relevant inquiry is not whether the plaintiffs' fear was reasonable, but whether they were placed in fear by the intentional conduct of the defendant. See Seney v. Morhy, 467 Mass. 58, 63 (2014); O'Brien, 461 Mass. at 420; Gassman v. Reason, 90 Mass. App. Ct. 1, 7 (2016). "In the determination whether the three acts 'did in fact cause fear, intimidation, abuse or damage to property,' it is 'the entire course of harassment, rather than each individual act, that must cause fear or intimidation.'" A.T. v. C.R., supra, quoting O'Brien, supra at 426 n.8.

The record supports the judge's finding that the defendant committed at least three acts meeting the statutory criteria.[9] First, Melody M.'s May 23, 2016 threat to turn a high power water jet onto the plaintiffs' property constituted a threat of physical damage to property, if not to the person, and the judge properly could find that such a statement was motivated by hostility and malice and was intended to intimidate the property owners and place them in fear of property damage. See C.E.R. v.

---

[9] The plaintiffs bear the burden of proof. See F.K. v. S.C., 481 Mass. 325, 332 (2019); Van Liew v. Stansfield, 474 Mass. 31, 36-38 (2016). We review the judge's factual findings for clear error. C.E.R. v. P.C., 91 Mass. App. Ct. 124, 126 (2017).

P.C., 91 Mass. App. Ct. 124, 126 (2017) ("Insofar as property is involved, only fear of physical damage will suffice"). While Melody M. contends that these words were simply hyperbole, it was for the judge, as finder of fact, to determine what Melody M.'s motive and intent were. See V.J. v. N.J., 91 Mass. App. Ct. 22, 28 (2017). Similarly, Melody M.'s argument that this type of threat could not have placed Ilan I. and Knox K. in fear is inapposite. It was for the judge, who heard the testimony and observed the demeanor of the plaintiffs, to determine whether the plaintiffs were in fact fearful. Id. The reasonableness of the fear is not at issue, see O'Brien, 461 Mass. at 427-428, so long as the fear was genuine and was intended by the defendant. Id. at 426 n.8.

The second act occurred on May 25, 2016, when, after Melody M. climbed up and leaned over the fence, she drove her car across their grass and up to the hedge. A third act occurred on May 29, 2016, when she blocked the plaintiffs' driveway with her car. This level of physical intrusion and the display of physical force -- that is, using the car to commit the trespass on May 25 and to block the plaintiffs' egress on May 29 -- support the inference that Melody M. intended to place Ilan I. and Knox K. in fear of damage either to their property or themselves. "As part of the contextual analysis, an individual's right 'to be let alone' in [his] home is relevant."

Commonwealth v. Bigelow, 475 Mass. 554, 568 (2016), quoting Rowan v. United States Post Office Dep't, 397 U.S. 728, 736 (1970). By this juncture, Melody M. had displayed a pattern of escalating conduct that no amount of entreaties, a no trespass notice, or threat of litigation had quelled. See J.C. v. J.H., 92 Mass. App. Ct. 224, 228-229 (2017) (considering entire course of defendant's conduct, including continuing contact after plaintiff told him "repeatedly to leave her alone"). From this course of conduct, taken as a whole, the judge could permissibly find that Melody M. would not take "no" for an answer, and that the plaintiffs' actual fear of physical harm or harm to property was prompted by malicious and intentional conduct on Melody M.'s part.[10]

Melody M. maintains that the statements she made to Ilan I. on May 25 and 29, 2016, while arguably obnoxious or offensive,

---

[10] The judge also found that the two incidents where Melody M. stopped her car and spoke to Ilan I. in a mocking manner, the first May 23 incident where she talked to Ilan I. from the neighbor's property, and the May 25 incident where she climbed on the fence, leaned into the property, and yelled at Ilan I. were separate acts of intimidation. Because we have delineated three acts, we do not need to decide whether these incidents also separately constituted acts within the meaning of G. L. c. 258E. Compare Bigelow, 475 Mass. at 565-566, with Commonwealth v. Johnson, 470 Mass. 300, 309-311 (2014). The judge did not consider, and we also do not reach the question whether these acts constituted criminal harassment under G. L. c. 265, § 43A, a separate ground for entry of a harassment prevention order under G. L. c. 258E. See A.S.R. v. A.K.A., 92 Mass. App. Ct. 270 (2017).

did not rise to the level of a true threat of harm to person or property, and were therefore protected by the First Amendment to the United States Constitution.  See O'Brien, 461 Mass. at 423-427.  This argument misses the mark.  The judge took great care to say that he did not consider the content of Melody M.'s speech as one of the three acts.  The judge found that the use of the word "boys," while offensive, did not rise to the level of a true threat or fighting words.  See Bigelow, 475 Mass. at 567, 570-571 (in usual case, whether speech rises to level of true threat is for fact finder); O'Brien, supra.[11]  The repeated use of the word "boys" was, however, evidence of the malice and hostility directed to the plaintiffs, and the judge was well within his discretion to consider that evidence in making his findings regarding Melody M.'s conduct.  The judge rested his conclusions, as do we, on the fact that Melody M. threatened to

---

[11] The plaintiffs rely on A.T. v. C.R., 88 Mass. App. Ct. at 537, for the proposition that they need not demonstrate that Melody M.'s speech rose to the level of a true threat, so long as her speech was intimidating.  Although A.T. v. C.R. could be so read, we clarified in A.R. v. L.C., 93 Mass. App. Ct. 758 (2018); A.S.R. v. A.K.A., 92 Mass. App. Ct. at 280; C.E.R. v. P.C., 91 Mass. App. Ct. at 130; and Gassman, 90 Mass. App. Ct. at 9, that, where a harassment prevention order is sought on the basis of speech alone, the plaintiff must show that the speech rose to the level of a true threat or fighting words.  See O'Brien, 461 Mass. at 426-427; Ellis E. v. Finn F., 96 Mass. App. Ct. 433, 441-442 (2019).  See also Bigelow, 475 Mass. at 567, 570-571 (criminal harassment).

damage property, trespassed on the property despite repeated requests to cease, and engaged in a show of physical force.

c. <u>Remedy</u>. Finally, Melody M. contends that the September, 2017 extension order as to Knox K. is invalid because he was not physically present in all three instances, and her conduct was therefore not "aimed at" him. G. L. c. 258E, § 1. The judge found that Melody M. knew that Ilan I. would tell his husband about her conduct, and that her actions were directed at both of them as the property owners. Her repeated references to the two men as "boys" also supports the inference that her conduct was directed at both of them. The judge permissibly found that the conduct was "aimed at a specific person." G. L. c. 258E, § 1. Both plaintiffs were "targeted." See <u>DeMayo</u> v. <u>Quinn</u>, 87 Mass. App. Ct. 115, 117 (2015) (construing term "aimed at" consistent with term "directed at" in G. L. c. 265, § 43A [<u>a</u>]). See generally <u>F.W.T.</u> v. <u>F.T.</u>, 93 Mass. App. Ct. 376, 378-379 (2018) (assuming, without deciding, that alleged harassing conduct was "intended to target" owner of property in ongoing property dispute).[12]

<u>January 9, 2017 extension</u>
<u>order affirmed</u>.

---

[12] To the extent that we do not address . . . other contentions of the plaintiffs, they "have not been overlooked. We find nothing in them that requires discussion." <u>Commonwealth</u> v. <u>Domanski</u>, 332 Mass. 66, 78 (1954).

<u>September 14, 2017 judgment and order as to Ilan I. affirmed</u>.

<u>September 14, 2017 judgment and order as to Knox K. affirmed</u>.